TREMAINE BAILEY #T-76513
Salinas Valley State Prison
P.O. Box 1050/31625 Hwy., #101
Soledad, Calif. 93960-1050
(for Plaintiff in Properia Persona)

Related DDJ

FILED
CLERK, U.S. DISTRICT COURT
OCT - 9 2018
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

CV18-8653-SVW(E)

| | |
|---|---|
| TREMAINE BAILEY, PLAINTIFF, v. J. SOTO, et al., DEFENDANTS. | CASE No.: 42 USC §1983 CIVIL RIGHTS COMPLAINT "FIRST AMENDED COMPLAINT" |

RECEIVED
10-5-18
CS

## I. JURISDICTION AND VENUE

1. This is a Civil Rights Violation action pursuant to and Authorized by 42 USC §1983 to redress the Deprivations under the Color of State Law of Rights, secured by the Constitution of the United States. The Court has jurisdiction under §28 USC Sections 1331 and 1343(a)(3). Supplemental Jurisdiction over Plaintiffs State Law Claims under 28 USC §1367.

Plaintiff seeks Claims for Injunctive Relief are Authorized by §28 USC Section (s) 2283 and 2284 and Rule #65 of the Federal Rules of Civil Procedures.

Plaintiffs claims for Declatory Relief, Pain and Suffering Compensation, Mental and Emotional Anguish, Punitive Damages, Nominal Damages, and Actual Physical Injuries Compensatory Damages and Awards Sanctions Pursuant to §28 USC Sections 2201 and 2202.

2. The United States District Court for the Central District of California, Western Division is the appropriate venue under §28 USC Section 1391(b)(2) because it is where the events given rise to this claim(s) occurred.

## II. PLAINTIFF.

3. Plaintiff, TREMAINE BAILEY, is and was at all times mentioned herein a Prisoner of the State of California in the custody of the California Department of Correction and Rehabilitations (C.D.C.R.), whom at the time of these events of Civil Rights Violations within the General Population of California State Prison-Los Angeles County (Lancaster), 44750 60th Street, Westm Lancaster California. 93536.

## III. DEFENDANTS.

4. Defendant "J. SOTO", is/was the Acting Warden of Lancaster State Prison during all times of the events herein giving rise to this Civil Complaint. He is/was Legally Responsible for the daily Operations of Lancaster State Prison, and for the welfare, wellbeing, safety and security of all inmates of that prison which Included Plaintiff TREMAINE BAILEY;

5. Defendant "D. J. Williams", is/was the Acting Associate Warden of Lancaster State Prison Prison during all times of the events herein giving rise to this Civil Complaint. He is/was Legally Responsible for the Daily Operations of Lancaster State Prison, to include facility "B" General Population, this also his duties as the Associate Warden of "Housing and Program" on Facility "B". Said defendant is responsible for the safety, security, welfare and welling of all inmates/Prisoners within that prison to include Plaintiff Tremaine Bailey;

6. Defendant "J.A. Zamora", is/was the Chief of the Office of Appeals (Inmates) is/was responsible for the accepting, processing, assigning log numbers, and to investigate/inquire about various inmate/Prisoner(s) matters, and forward

said appeals to the proper CDCR Staff/Entity for responses/processing/possible resolution(s). And though not directly, said defendant is responsible for the safety, security, welfare, and wellbeing of all inmates/Prisoners within that prison to include Plaintiff TREMAINE BAILEY;

7. Defendant "B. Harris" is/was acting under the premises of Appeals Coordinator within the Lancaster State Prison, and was also responsible for the accepting, processing, assigning log numbers and tracking all inmates/prisoners appeals, also to investigate/inquire into matters of various inmates/prisoners issues/ complaints when deemed appropriate and to provide assistance to those inmates/ prisoners that require it whom are in need of said assistance. And though not directly, said defendant is responsible for the safety, security, welfare, and wellbeing of all inmates/prisoners within that prison to include Plaintiff TREMAINE BAILEY;

8. Defendant "P. M. Carranza" is/was and acting Sergeant on facility "B" of Lancaster State Prison, and as such throughout the transpiration of events herein giving rise to the Civil Rights Violations of Plaintiff held that position of ranking supervisory supervisor so mentioned herein, and is/was responsible to the facilitation of running the facility "B" yard general population program as the yard sergeant throughout these events mentioned herein. Said defendant is/was responsible for the safety, security, welfare, and wellbeing of all inmates/prisoners on facility "B" which included Plaintiff TREMAINE BAILEY;

9. Defendant "D. L. Lueridan" is/was a correctional officer and employeed as such within the Lancaster State Prison, and held that position of rank throughout the transpiration of events herein giving rise to the Civil Rights Violations of Plaintiff. Said defendant was assigned to Facility "B" as a correctional officer, and is/was responsible for the safety, security, welfare and wellbeing of all inmates/prisoners within that facility to include Plaintiff TREMAINE BAILEY;

10. Defendant "F. Castro", is/was a correctional officer and employed as such within the Lancaster State Prison within facility "B", and held that position of rank throughout the transpiration of events so stated herein giving rise to the Civil Rights Violations of Plaintiff as so stated within these pleadings. Said defendant was/is responsible for the safety, security, welfare, and wellbeing of all inmates/prisoners within the facility "B" General Population to include Plaintiff TREMAINE BAILEY;

11. Defendant "A. Martinez", is/was assigned as a correctional lieutenant and held that position of rank throughout the transpiration of events stated herein within these pleadings. Said defendant was/is responsible for the safety, security, welfare, and wellbeing of all inmates within the Lancaster State Prison and facility "B" General Population inmates/prisoners to include Plaintiff TREMAINE BAILEY;

12. Defendant "Alfredo Diaz", is/was assigned as a correctional officer and held that position of rank throughout the transpiration of events stated herein giving rise to the Civil Rights Violations of Plaintiff as so stated within these pleadings. Said defendant was/is responsible for the safety, security, welfare, and wellbeing of all inmates/prisoners within the facility "B" General Population to include Plaintiff TREMAINE BAILEY;

13. Defendant "M. Moz", is/was assigned as a correctional officer, facility "B" security patrol #4 within the Lancaster State Prison and held that position of rank throughout the transpiration of events stated herein giving rise to the Civil Rights Violations of Plaintiff as so stated within these pleadings. Said defendant was/is responsible for the safety, security, welfare, and wellbeing of all inmates/prisoners within the facility "B" General Population to include Plaintiff TREMAINE BAILEY;

14. Defendant "Chander P. Malhotra", is/was employed within the Lancaster State Prison as a Neurologist, Medical Doctor (M.D.) and as such he is responsible

for the physical medical health, care, safety, security, mental wellbeing and welfare of all inmates/prisoners patient(s) within the Calif. State Prison-Lancaster, to include Plaintiff TREMAINE BAILEY, as such, said defendant is/was responsible to physically medically diagnosis and treat Plaintiffs life threating injuries, and provide any further medical treatments deemed necessary to adequately preserve Plaintiffs medical welfare,wellbeing and mental health as a direct result of the injuries of Plaintiffs sustained as a direct result of being a victim of a brutal and vicious attack while Plaintiff slept which said defendant is/was responsible for the "After Medical Care" of Plaintiff. Defendant Chander P. Malhotra (M.D.) was/has been Deliberately Indifference to Plaintiff's Serious Medical Needs as setforth within these pleadings, and as such is liable to Plaintiff for the Intentional "Pain", "Suffering", and "Untreated Medical Head Injuries" Plaintiff suffers from due to the lack of needed Medical Care and treatments services required for Plaintiff's conditions.

15. Defendant "R. Humenick", is/was a correctional officer as One of Several Investigative Services Unit (I,S,U.) officers employed within the Lancaster State Prison, and was employed as such in said capacity on July 12th, 2013. Said defendant was/is responsible for the legal investigation into the Vicious and Brutal Attack on Plaintiff on said date, and collecting evidence regarding said attack. Said defendant is/was responsible for the safty, security, wellbeing, and welfare of all inmates/prisoners within the Lancaster State Prison, to include Plaintiff TREMAINE BAILEY;

16. Defendant "L. M. Sears" is/was a correctional officer as One of Several Investigative Services Unit (I.S.U.) officers (K-9 #1) employed within the Lancaster State Prison, and was employed as such in said capacity on July 12th, 2013. Said defendant was/is responsible for the legal investigation into the Vicious and Brutal attack on Plaintiff on said date, and collecting evidence

regarding said attack. Said defendant is/was responsible for the safty, security, welfare, and wellbeing of all inmates/prisoners within the Lancaster State Prison, to include Plaintiff TREMAINE BAILEY;

17. Defendant "D. Mebane", is/was a correctional officer as One of Several Investigative Services Unit (I.S.U.) officer #5 employed within the Lancaster State Prison, and was employed as such in said capacity on July 12th, 2013. Said defendant was/is responsible for the legal investigation into the Vicious and Brutal Attack on Plaintiff on said date, and collecting evidence regarding said attack. Said defendant is/was responsible for the safty, security, welfare, and wellbeing of all inmates/prisoners within the Lancaster State Prison, to include Plaintiff TREMAINE BAILEY;

18. Defendant "A. Johnson", is/was a correctional officer as One of Several Investigative Services Unit (I.S.U.) officers #6 employed within the Lancaster State Prison, and was employed as such in said capacity on July 12th, 2013, Said defendant was/is responsible for the legal investigation into the Vicioos and Brutal Attack on Plaintiff on said date, and collecting evidence regarding said attack. Said defendant is/was responsible for the safty, security , welfare and wellbeing of all inmates/prisoners within the Lancaster State Prison, to include Plaintiff TREMAINE BAILEY;

19. Defendant "A. Sanchez", is/was a correctional officer and held that position of rank and title and was employed within the Lancaster State Prison on July 12th, 2013, in housing unit facility "B"-"3" Tower/Gunner officer. Said defendant was/is responsible for the overseeing of the facility B-3 housing unit on July 12th, 2013, and the events stated herein giving rise to the Civil Rights Violations of Plaintiff as so stated within these pleadings. Said defendant was/is responsible for the safty, security, welfare and wellbeing of all inmates/prisoners within the facility B-3 housing unit on this date, to include Plaintiff TREMAINE BAILEY;

20. Defendant "V. Adams", is/was a correctional officer and held that position of rank and title and was employed within the Lancaster State Prison on July 12th, 2013, and the events stated herein giving rise to the Civil Rights Violations of Plaintiff as so stated herein within theses pleadings. Said defendant was/is responsible for the safety, security, welfare and wellbeing of all inmates/prisoners within the facility-B yard to include Plaintiff TREMAINE BAILEY;

21. Defendant "D. Cobbs", is/was employed within the Lancaster State Prison as a Staff Services Analysis (S.S.A.) a division of the Lancaster State Prison's Appeals Coordinator's Offices, and was so employed on April 1st, 2014, in said capacity. Said defendant is responsible for the accepting, processing, assigning log numbers and investigating/inquiring about various inmates/prisoners grievances appeals matters when deemed necessary, and forwarding said inmate(s) grievances appeals to the proper CDCR Staff/Entity for responses/ processing/possible resolutions of issues/matters contained within said inmates appeals grievances. And though not directly, said defendant is responsible for the safety, security, welfare, and wellbeing of all inmates/prisoners within the Lancaster State Prison to include Plaintiff TREMAINE BAILEY;

22. Defendant "V. Powers", is/was employed within the Lancaster State Prison as an Appeals Coordinator and is/was responsible for the accepting, processing, assigning log numbers, tracking, all inmates/prisoners grievances appeals, also to investigate staff misconduct complaints and/or investigate/inquire about varioue inmates/prisoners grievances appeals matters/issues when deemed necessary, and forwarding said inmates/prisoners grievances to the proper CDCR Staff/Entity for responses/resolution/ and processing contained within said inmate/prisoner grievance appeal(s). And though not directly, said defendant is responsible for the safety, security, welfare, and wellbeing of all inmate/prisoners within the LAncasater State Prison to include Plaintiff

TREMAINE BAILEY;

23. Defendant "Tom Case", is/was and acting Sergeant on facility "B" of Lancaster State Prison, and held that rank of position on July 12th, 2013 and as such throughout the transpiration of events herin giving rise to the Civil Rights Violations of Plaintiff on said stated date(s) herein, and was one of the ranking supervisory officer(s) so mentioned herein, and is/was responsible for the facilitation of the running of facility "B" yard general population program throught these events mentioned herin. Said defendant is/was responsible for the safety, security, welfare, and wellbeing of all inmates/prisoners on facility "B" which included Plaintiff TREMAINE BAILEY;

24. Defendant "J. Buendia", is/was employed within the Lancaster State Prison's Medical Department as a Licensed Vocational Nurse, and as such is responsible for the physical medical care, health, medical treatments, safety, security, mental wellbeing and welfare of all inmates/prisoners patient(s) within the Lancaster State Prison;

25. Defendant "B. Ingram", is/was employed within the Lancaster State Prison's Medical Department as a Licensed Vocational Nurse, and as such is responsible for the physical medical care, health, medical treatments, safety, security, mental wellbeing and welfare of all inmate/prisoner patient(s) within the Lancaster State Prison;

26. Defendant "I. Ibarra", is/was employed within the Lancaster State Prison's Medical Department as a Registered Nurse, and as such is responsible for the physical medical care, health, medical treatments, safety, security, mental wellbeing and welfare of all inmate/prisoner patient(s) within the Lancaster State Prison;

27. Defendants "John and Jane Does" one thru ten (1-thru-10) whom identies are unknown to Plaintiff at this time and Plaintiff reserves the right to either supplement his pleadings to add such defendants as their identies become

known to Plaintiff as a result of information developed and received during the course of the litigation of these matters and/or during the discovery phase of this action;

28. "EACH OF THE LISTED DEFENDANTS AND JOHN/JANE DOES ONE THRU TEN (1-Thru-10) WITHIN THIS CIVIL RIGHTS ACTION ARE BEING SUED IN THIS MATTER IN THEIR "IND-IVIDUAL AND OFFICIAL CAPACITIES, WHILE ACTING UNDER THE COLOR OF STATE AND FEDERAL LAWS AND AUTHORITIES OF THE STATE OF CALIFORNIA AND THE UNITED STAT-ES OF AMERICA".

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

## IV. LEGAL CLAIMS:

These following Civil Rights Violations transpired to and upon Plaintiff TREMAINE BAILEY (Herein After is described as PLAINTIFF) that transpired on July 12th, 2013, that has impacted and changed Plaintiff's life forever:

29. On or about January 1st, 2013 Plaintiff was originally housed within the Calif. State Prison-Lancaster (Herein After described as CSP-LAC), on Facility "B-4-135-Low". Between January 25th, 2013 and June 13th, 2013, a racial riot had transpired within the facility"B" yard in which Plaintiff was not a part of nor participated within.

30. Due to Plaintiff's then housing unit of Facility B-4 being temporily converted into a tempory administtrative segregation housing unit as so to house those inmates/prisoners involved participating within this alleged riot, Plaintiff was instructed and ordered to pack-up his personal property and that he was getting rehoused to facility housing unit "B-3-107-up.

31. Upon Plaintiff being given this direct order to pack-up his property as so he could be moved, Plaintiff had inquired as to where he would be moving to and to whom with. Plaintiff was informed to just "Roll-Up his shit" (Property, that he was moving and/or rehoused, and that he would be given further instructions when he arrived within the "B-3" housing unit. Plaintiff complied with defendant(s) john/jane does instruction and packed-up his real and personal miscellaneous property and other belongings, and was then escorted over to housing unit "B-3" as the facility "B" inmate/prisoner General Population was still on a lock-down (Modified Program).

32. Upon Plaintiffs arrival within the facility "B-3" housing unit, and made aware that he was being moved into cell "B-3-107-up", Plaintiff voiced several of many concerns. The First being if he was being moved in and/or celled-up with anyone else, and if so could he go to that cell and talk to the inmate he was being forced in the cell with, to see if he and that inmate later id-

entified as inmate "Dominic Johnson, #AK-5828" (Herein After described as inmate Johnson), to asure and/or verify that he and inmate Johnson were infact actually compatable, as Plaintiff did not know whom this inmate was originally.

33. As soon as Plaintiff asked Defendants (to whom were actually unknown to Plaintiff at the time of his being rehoused on this day/date) "Alfredo Diaz" and "Daniel L. Lueridan" the facility B-3 housing unit (regular) officers on Third Watch (3rd/W), these "TWO" defendants-officers employed intimidation tactics against Plaintiff in that they told plaintiff that he was going to be one of those "Difficult Inmates", it was at this time Plaintiff had also conveyed to these "Two" facility B-3 third watch housing unit officers that he (Plaintiff) had a "Lower-Bunk, Lower-Tier" medical chrono, and that the inmate they were forcing Plaintiff to move in with was already on the bottom bunk, when Plaintiff was eventually allowed to go see and speak to this inmate "Johnson", and that said defendants couldn't be more further from the truth about their statement that Plaintiff was being difficult.

34. When Plaintiff had informed these two defendants about his "lower-lower" bed restrictions, and that he just wanted to asure himself of his own safety by way of at least being within a cell where he has the bottom bunk bed as was "Medically Ordered" for Plaintiff and Plaintiff wouldn't have to have someone whom already had a bottom bunk to being forced to moved to a top-bunk bed area, when they had been within their assigned cell "First", which ALWAYS causes a immediate conflict. These "Two" defendants threatened Plaintiff that he could have "One of Two" choices. Choice No.: One, He (Plaintiff) could go into the newly assigned cell with inmate Johnson and they would see about a cell move later, or Choice No. "Two", they (defendants Alfredo Diaz and Daniel L. Lueridan) could say and/or allege that Plaintiff had "Threatened Them" and Plaintiff could be escorted back to his old housing unit (now designated as

a tempory administrative segregation-solitary confinement restrictive housing unit) and get his old cell back on ad-seg status, Because Plaintiff at the time did not want to be deemed a administrative problem, Plaintiff was forced to go into the cell with inmate Johnson against Plaintiffs will instead of being subjected to a fabricated, falsifide disciplinary rule violation report (RVR) for "Disobeying a direct order", "Obstructing/Delaying a peace officer in the performance of their duties" and/or "Refusing Housing Assignment"

35. Plaintiff also around this time or shortly thereafter, encountered Defendant "Tom Case", whom was also assigned to the facility "B" yard as a third watch (3rd/W) Program sergeant with the authority to facilitate bed move especially in an "Emergency" situation was made aware of Plaintiffs uncompatability issue with inmate Johnson, and furthermore, it had become obvious to Plaintiff that inmate Johnson suffers from serious acute "Mental Health Problems" and has continuously had both verbal and physical conflicts and or altercations with just about every cellmate he has been assigned to being housed with.

36. But when Plaintiff attempted to stress his urgent need for a cell move due to Plaintiffs "Medically Ordered Lower-Bunk, Lower-Tier Chrono" and that inmate Johnson already being housed within the "B-3" housing unit and occupying the bottom bunk, Plaintiff took it upon himself to not add to the obvious issues and matters for which he and inmate Johnson were still uncompatable but even moreso due to inmate Johnson's mental health problems, and by forcing Plaintiff into the cell with inmate Johnson was creating major verbal and potentially violent envioronment within their cell of "B-3-107" by correctional officers and their senior supervisors, sgt. "Tom Case" whom had prior knowledge of this violent situation these officers (Defendants) had/have created.

37. Plaintiff then had sought to go over these named defendants heads since they refused to provide Plaintiff a cell move out away from inmate Johnson whom

continued to act and/or displaying eractic behavior, to the point that Plaintiff could not sleep at night due to inmate Johnson's making loud noises, talking out loud to himself at all hours of the night, and pacing the cell floor throughout the night, Plaintiff could only get a little sleep during the daylight hours, in which these times often varied.

38. Plaintiff had stopped Lieutenant (Defendant) A. Martinez, that inmate Johnson was suffering from some serious mental problems, and that not only did Plaintiff feel unsafe and uncomfortable around this inmate, Plaintiff could not go to sleep due to inmate Johnson's "Unperdictability" and the actions of inmate Johnson since Plaintiff moved into the cell with him.

39. Both defendants Lieutenant "A. Martinez", and Sergeant "Tom Case", only advised Plaintiff that "Convenience Bed Moves" were only done on the weekends, and that they (Defendants Tom Case and A. Martinez) would have the facility "B-3" housing unit officers look into Plaintiffs situation, and basically "Blew Plaintiff Off". Because Plaintiff did not wish to be labeled a adminisstative problem, as Plaintiff had advised defendants Alfredo Diaz and Daniel L. Lueridan, and several John's and Jane's does (1-thru-10) that inmate Johnson had several prior previous confrontations allegations with "NUMUROUS CELLMATES", and NO-BODY (INMATES) wanted to cell-up with him.

40. Yet,instead of these defendants attempting to resolve this problem and potentially dangerous situation before it would become to the point that it did due to these defendants negligence and intentional deliberate indifference to Plaintiffs safety, security, welfare, and wellbeing needs. But as stated previously stated, instead of resolving this dangerous situation before what transpired on July 12th, 2013, defendants "Diaz" and "Lueridan" threaten Plainttiff with a disciplinary rule violation report (RVR) for "Delaying a Peace office in the performance of their duties", for refusing to accept assigned housing, as Plaintiff was doing his best to continuing on with his positive pr-

ograming with as little problems as necessary, that Plaintiff could avoid.

41. On or about July 1st, 2013, Plaintiff was finally assigned to the bottom bunk bed within cell "B-3-107".

42. On July 12th, 2013, Defendant "A. Sanchez", was assigned as the facility B-3 control booth gun officer, his duties amongst other assigned responsibilities of opening and closing cell doors is to stay ever vigilant within the facility "B-3" gun tower's full view surrounding windows where defendant A. Sanchez visibility into each cell is unobstructed and said defendant was to been, and should have been aware of the vicious brutal attack upon Plaintiff Bailey, by this defendants being derelict in the performance of his prescribed mandated duties, he has failed to provide a reasonable amount of protection to Plaintiff and thereby his blatant failure to protect Plaintiff as per his prescribed job assignment duties on July 12th, 2013, and thereby has/had failed to protect Plaintiff as prescribed by the "Eighth" (8th), Amendment of the United States Constitution.

43. Defendant Alfredo Diaz, whom was asigned as the Third Watch (3rd/W) facility "B-3" floor officer #2, On July 12th, 2013 with prior foreknowledge of what he would discover hence is/was the reason for doing the following, invited his facility "B-3" floor officer partner Defendant "Daniel L. Lueridan", to walk the facility "B-3" upper tier with himself to pass out inmate mail and to conduct security checks of all inmates within their cells. (See CDCR-837 Crime/Incident Report, Part-C Staff Report).

44. As stated by defendant "Alfredo Diaz", within this repor "VERBATIM" At approximately 1428 hrs, while passing out the mail on the top tier, officer Daniel L. Lueridan, advice me to walk with him to cell "B-3-107", due to someone yelling "107" As we approached cell #107, I observed inmate Dominic Johnson # AK-5828, FBB3-107-Up standing in the back of the cell with clinched fists with what appeared to be "BLOOD ON HIS HANDS". I immediately announced via ins-

titutional radio a "Cell-Fight" in cell "B-3-107, and activated my personal alarm device. Plaintiff "Prisoner Tremaine Bailey, #T-76513, FBB3-107 was laying on the floor with "BLOOD COMING FROM HIS FACIAL AREA AND HEAD"..."FORMING A PUDDLE OF BLOOD ON THE FLOOR"..."BAILEY APPEARED TO BE UNCONSCIOUS AND UNRESPONSIVE...

45. "DUE TO BAILEY'S INABILITY TO STAND UP AND FOLLOW VERBAL INSTRUCTIONS, I ALONG WITH RESPONDING STAFF GRIPPED BAILEY'S RIGHT ARM AND DRAGED/SLID BAILEY OUT OF THE CELL, HE WAS EVALUATED BY MEDICAL STAFF...RESPONDING STAFF THEN PICKED-UP BAILEY AND PLACED HIM ON THE GURRNEY."

46. "Baily (Bailey) was taken out of the building for medical treatment by responding st5aff. Lieutenant (Defendant) "A. Martinez", instructed me to check out a still camera from Central Control. I reported to Facility-B medical and took "Three" (3) separate pictures of Baily's (Bailey's) Face and Head area. I submitted an "Olympus LL-17905 Camera" to "A" and "B" Sub-evidence room locker #27.

47. Defendant "Alfredo Diaz", on or between June 13th, 2013 and July 1st, 2013, had prior knowledge of the "Uncompatability/Unsuitability" Plaintiff had with inmate Johnson, as also did Defendant "Daniel L. Lueridan" (Building B-3 second watch (2nd/W) floor officers) as Plaintiff had repeatedly notified both of these defendants that he and inmate Johnson were not compatable to being celled-up together any longer to the point whereas, Plaintiff was willing to just take these officers disciplinary write-up(s) as long as Plaintiff accomplished getting seperated away from inmate Johnson.

48. Plaintiff had also made additionally several other attempts to have both of these two officers, Defendants sgt. "Tom Case" and lt."A. Martinez", to move Plaintiff from inmate Johnson during this period leading up to Plaintiff being "Severly and Brutally Beaten to within Inches of his Life while he Slept" as (IT IS PLAINTIFF'S BELIEF) That these named defendants had iniciated a

"Rumor", that Plaintiff was a Sex Offender" and/or "Sexual Predator", with a "R"-Suffix on and/or within Plaintiff Central Files (C-Files)(Also refered to as Plaintiff's Jacket) (NOTE: A "R" SUFFIX REPRESENT A FORM OF HOUSING RESTRICTION ON PLAINTIFFS FILES WHICH IS TO BEEN CONSIDERED WHEN HE WAS BEING HOUSED WITHIN ANY CALIFORNIA CORRECTIONAL INSTITUTIONAL FACILITY OF THE DEPARTMENT OF CORRECTION AND REHABILITATIONS.)

49. Furthermore, when Plaintiff was inicially moved from facility housing unit "B-4" due to it now being designates as a "Tempory Administrative Segregation Overflow Unit" for those inmates that had been involved within the facility "B" racial riot between Black and Hispanic inmates a week or two priorly as so stated earlier within these pleadings. As when Plaintiff practacally had pleaded with these named defendants all the way up to the day that Plaintiff was "Viciously", "Brutally" and "Sadistically" beaten while he slept and was defenseless to protect himself as it has been discovered (ALLEGEDLY) that on July 1st, 2013, Plaintiff had a Bed reassignment within the very same cell of "B-3-107-Low" now though this was done, Plaintiff was still sleeping on the "Top-Bunk Bed" as Plaintiff did not wish to enhance the already threatening situation that was already looming within the cell between himself and inmate Johnson

50. Plaintiff asserts that though he attempted to do everything at his disposal to resolve this situation between himself and inmate Johnson, the obvious end result Plaintiff achieved was to be "Severly Beaten while he slept upon the Top-Bunk Bed to the point of his life now being "Completely Altered/Changed by and from the Sustained Head Trauma, Facial Trauma's, Brain Damages, and being "Comatose" for almost Two-Weeks.

51. Defendants Alfredo Diaz, Daniel L. Lueridan, Tom Case, and A. Martinez, were derelict in their mandated job duties and thereby were also "Deliberately Indifference" to Plaintiffs "Safety and Security" concerns/needs in that they

knew of a existing serious problem(s) that could/would result in a Physical Altercation and Possible Death of Plaintiff yet, DID NOTHING ABOUT ELIMINATING THAT THREAT! Nor did the ever attempt to rectify this ever present problem. These Individuals in the course of their mandated job descriptions and duties "Intentionally" and "Maliciously" failed to "Protect Plaintiff from the Sever Beating to within Inches of Plaintiff's Life". And did so "Knowingly", and with "Callaous Disregards to Plaintiffs Safety and Security Needs.

52. Furthermore, both defendants "Alfredo Diaz" and "Daniel L. Lueridan", where Knowingly, Intentionally, and Maliciously Deliberately Indifference to Plaintiffs "Serious Medical Needs" and possible contributed to Plaintiffs sustained injuries thereby exacerbating Plaintiffs injuries that were obvious to the human eyes in that defendant Alfredo Diaz's own CDCR-837 Crime/Incident Report(s) and self admittance, and that any lay-person(s) could determine that Plaintiff had suffered "Serious Life Threatening Injuries" which said defendant Diaz's report falsily accused that Plaintiff had been in a cell fight, when ALL OTHER REPORTS HAVE INDICATED PLAINTIFF HAD BEEN ASSAULTED. (NOTE: A FIGHT CONSIST OF TWO INDIVIDUALS STRIKING EACH OTHER WITH PHYSICAL BLOWS TO ONE ANOTHERS BODY...AND AS SUCH DEFENDANT ALFREDO DIAZ DID NOT PERSONALLY WITNESS ANY PHYSICAL ALTERCATION WHEREAS HE SEEN TWO COMBATANTS STRIKING EACH OTHER, THEREFORE, THIS DEFENDANT KNOWINGLY FILED A FALSE REPORT WITHOUT ANY "FACTS THAT WHERE INTO EVIDENCE.)

53. That he (Diaz) and Lueridan seen Inmate Baily (Bailey) lying on the cell's floor with "BLOOD COMING FROM HIS FACIAL AREA AND HEAD FORMING A "PUDDLE OF BLOOD ON THE FLOOR"...THAT INMATE BAILY (BAILEY) APPEARED TO BE UNCONSCIOUS AND UNRESPONSIVE, AND KNOWING THIS...INSTEAD OF GETTING INMATE JOHNSON OUT OF THE CELL, AND ALLOWING VICTIM BAILEY TO BE ATTENDED TO BY MEDICAL PERSONNEL DUE TO THE EXTENT OF PLAINTIFFS EVER OBVIOUS INJURIES, AND DEFENDANTS DID NOT PREFORM ANY LIFE SUSTAINING FIRST AID, SUCH AS CHECKING INMATE BAIL-

Y'S (BAILEY'S) FOR VITAL SIGNS TO SEE IF HE NEEDED FIRST AID OR C.P.R., THIS DEFENDANT INTENTIONALLY AND MALICIOUSLY ALONG WITH THE HELP OF HIS PARTNER DANIEL L. LUERIDAN, AND RESPONDING STAFFS (DOES 1-THRU-10) "GRIPPED BAILY'S (BAILEY'S) RIGHT ARM AND SLID/DRAGGED BAILY (BAILEY) OUT OF THE CELL...to where said defendants claimed Medical Staff evaluated him (Bailey) (Does 1-thru 10) and then responding staff "picked Inmate Baily (Bailey), put him on a "Stokes Gurney" and took Plaintiff to the facility's mini yard clinic.

54. Plaintiff should had been removed from cell B-3-107 housing unit via Correc-ional Treatment Center (C.T.C.) "Emergency Trauma Medical Personnel and Am-bulance directly to the Lancaster State Prison (CSP-LAC) facility "Emergency Room" on site hospital", and transported off grounds via Ambulance to an "Emergency Room Hospital".

55. Instead, defendant "M. Moz", Knowing Plaintiff was "Severely Injuried","Co-matose", "Unresponsive", "Unconscious" and Bleeding from his head and facial area...TOOK IT UPON HIMSELF...TO PLACE PLAINTIFF WITHIN HANDCUFFS, WHILE ST-ILL WITHIN THE FACILITY'S GROUNDS AND HOUSING UNIT B-3, AND THEN TOOK PLAIN-TIFF TO THE YARDS FACILITY CLINIC, BEFORE PLAINTIFF COULD OBTAIN THE EMERGE-NCY TREATMENT TO SAVE HIS LIFE...DEFENDANTS FACILITY SUPERVISOR, LIEUTENANT /DEFENDANT "A. MARTINEZ"...SENT DEFENDANT "DIAZ" OFF FACILITY...TO CSP-LAC's CENTRAL CONTROL...TO CHECK-OUT A CAMERA...AND THEN THIS DEFENDANT UPON OBTA-INING AID CAMERA, WENT TO THE FACILITY'S "B" MINI-MEDICAL CLINIC (NOT THE EMERGENCY ROOM OF THE PRISON'S HOSPITAL WHEREAS PLAINTIFF COULD/WOULD POSSI-BLE RECEIVE EMERGENCY TREATMENTS, SERVICES, AND CARE)..CONDUCTED WHAT AMOUN-TED TO A "PHOTO-SHOOT" OF PLAINTIFF IN A STATE OF UNCONSCIOUSNESS, INRESPON-SIVE, AND BLEEDING PROFUSELY FROM A LIFE THREATENING HEAD TRAUMA, AND ONLY AFTER HE'S COMPLETED HIS "PHOTO-SHOOT", WAS PLAINTIFF THEN TRANSPORTED TO THE PRISON'S CORRECTIONAL TREATMENT CENTER (C.T.C.), WHERE IT WAS DEEMED TH-AT PLAINTIFF HAD TO BE TRANSPORTED OFF SITE/OFF GROUNDS TO THE ANTELOPE VAL-

LEY HEALTH CARE DISTRICT HOSPITAL FOR LIFE SAVING EMERGENCY CARE AND TREATMENT THAT SPECIALIZED IN HEAD TRAUMA'S "STAT"

56. Plaintiffs life was held in the balance, by these named defendants, knowingly , intentionally, and malicious act's after the fact that due to the fact of the obvious, blatant seriousness of Plaintiffs condition, being "Unconsciousness and Unresponsive" with Blood profusely pouring from the Left side of Plaintiffs head and a fractured Nose, that may well have been "Pushed Plaintiffs Nasal Bone into his "Frontal Cortex of his Brain"".

57. The time it had taken for these defendants delayed in getting Plaintiff "Emergency Medical Treatment" and "Care" to sustaine Plaintiffs life and obvious Injuries, said defendants so named herein, "Overly exceeded even the most basic Remedial Safety and Security Care that amounts to "Cruel and Unusual Punishment" as one could only imagine with just observing Plaintiffs destressed life threatening injuries and Brain Damages, "How much pain and Suffering Plaintiff was enduring" while these correctional officers and medical staff personnel were only worried about their "Protocol's" to process a "Crime Scene" and the victim first and foremost instead of getting Plaintiff the Emergency treatments, services, and care he was so desperately in need of.

58. Defendant "Daniel L. Lueridan", "Alfredo Diaz", and "A. Sanchez", all failed to protect Plaintiff on July 12th, 2013, and thereby are liable for said Constitutional Rights Violation that each had prior knowledge exist.

59. Defendant "D. Mebane", was assigned as one of several Investigative Services Unit (I.S.U.) officer #5 and was employed within the CSP-LAC in that/this capacity on July 12th, 2013 and as per his submitted CDCR-837 Crime/Incident Report visually witnessed Plaintiff Bailey #T-76513, "Unconscious and Bleeding from his Facial Area, Lying on the Cell's Floor inside cell #B-3-107, and states "Verbatim"..."Due to the Severity Nature of Inmate Bailey's Injuries, He was "SUBSEQUENTLY TRANSPORTED TO THE CORRECTIONAL TREATMENT CENTER (C.T.C.)

TREATMENT TRIAGE AREA (T.T.A.)(EMERGENCY ROOM) FOR FURTHER MEDICAL TREATMENT, as this shows also the extent of Plaintiffs Bailey's Injuries.

60. Defendant "M. Moz", whom was assigned as a facility "B-yard" Security Patrol #4 officer, and was so employed as such within the CSP-LAC institutional facility on July 12th, 2013, "Knowingly", "Intentionally", and with "Malicious Forethought" per his CDCR-837 Crime/Incident report, Stated "He had turned his attention towards inmate "Bailey" after inmate Johnson was removed from the cell and He (M. Moz) states Bailey who was at the front of the cell laying in a "PUDDLE OF HIS OWN BLOOD"...Appeared to be coming from his facial area, and seeing Inmate Bailey was "UNCONSCIOUS AND UNRESPONSIVE", was only concerned about placing Plaintiff in Handcuffs, and only then after he (Moz) assisted medical staff lift Plaintiff onto the gurney and then escorted Bailey to the "Bravo" Medical Clinic along with Licensened Vocational Nurse (Herein after LVN) Defendant "J. Buendia".

61. Upon Plaintiffs "URGENT/EMERGENCY" care being "DELAYED" and instead of transporting Plaintiff Bailey stright from Facility B-3-107 housing unit, to the CSP-LAC's Correctional Treatment Center (C.T.C.) Emergency Room "Triage Treatment Area" (T.T.A.), this defendant and medical personnel Defendant "J.Buendia" and Defendant Registered Nurse (R.N.) "V. Adams", then transported Plaintiff from the facility "B" medical mini clinic to the "Triage Treatment Area" via institutional Ambulance, and then upon Plaintiffs arrival at that designation medical location defendant R.N. "Ibarra" informed said defendants "M. Moz", and "V. Adams", that Plaintiff Bailey has/had to be transported to a off facility community hospital to which "Antelope Valley Community Hospital via 911 transmission due to Plaintiffs Urgent need for a "Higher Level of Medical Care". The type of care that medical personnel at CSP-LAC knew they were unable to provide Plaintiff from the onset of this "Vicious","Brutal" Beating that neither custody correctional administrators or medical staff co-

uld provide and/or were trained medically to provide Plaintiff which only could a "Neurologist Specialist" and "Head Trauma Specialist" could provide all the while, during the course of these repeated numerous delays, Plaintiff's Life literally was held in the balance" of these named defendants, that knew Plaintiff was "Unconscious", "Unresponsive", and "Comatosed".

62. Yet, defendants "M. Moz", and "V. Adams" only sought to place Plaintiff within "Handcuffs" and Plaintiff believes "Leg Restraints", this was also reported by defendant "V. Adams" of defendant "M. Moz".

63. These named defendants "Reckless Disregards to Plaintiffs Human Life" situation, and their Unnecessary Actions upon Plaintiff while Plaintiff was in this obvious "Life or Death" situation show's and proves a "Callous disregard to Plaintiffs sustained injuries and goes way beyond any thresshold of "Deliberate Indifference" to Plaintiffs Urgent Emergency Needs.

64. Defendant LVN "J. Buendia". and Defendant RN "I. Ibarra"intentionally delaying in seeking and obtaining Immediate (Forthwith) Urgent Medical Treatment, Services and Care, that they knew they themself could not provide to Plaintiff yet, instead of ordering an Ambulance to come upon the facility B-3 compound, and transporting Plaintiff stright to the Correctional Treatment Center's (C.T.C.) "Emergency Room" Triage Treatment Area (T.T.A.) and notifying off facility community hospital instead of keeping Plaintiff in the Housing Unit, then transfering Plaintiff to the facility "B" yard's "Mini Medical Clinic" where aside from a Ambulance that should have been summoned Immediately while Plaintiff layed "Comatosed", "Unresponsive" and Bleeding from his "Face and Head" (Ear) Area , Plaintiff in this Urgent State of Medical Needed Treatments, had to await for defendant "Alfredo Diaz" to go check-out a camera off facility/cite of facility "B" to Central Control, then he has to go to the facility "B" yards mini clinic to preform what amounted to a Photo shoot, taking pictures of Plaintiff in his state of distress and near DEATH

and was able to complete this photo-shoot task, while all this time a Institutional Ambulance still had not arrived to transport Plaintiff to the Institutional Facility's Emergency Room's Triage Treatment Area/Center for a Higher Level of Care that could not have been provided at their yards mini-clinic which these individuals knew in advance, let alone their Correctional Treatment Center (C.T.C.) facility's Emergency Room Hospital.

65. Defendants in their Individual and Official Capacities, "Knowingly", "Willfully", "Intentionally" and "Maliciously" were "Deliberately Indifferent" to Plaintiff's Urgent Life or Death Serious Medical Needs, and therefore, subjected Plaintiff to further endure their Intentional and Malicious Cruel and Unusual Punishments, by delaying plaintiff's Medical treatment and care in which this institutional facility not only wasn't equipped to handle, but no Supervising Doctor and/or "Primary Care Provider" (P.C.P.) had been on-site of the CSP-LAC's Institutional Grounds to ascertain and Medically Evaluate Plaintiff's Life Threatening Injuries, and therefore, Plaintiff's only could be diagnosed of his Imminent Injuries by a Licensed Vocational Nurse (L.V.N.) and a Registered Nurse (R.N.) (Male Hispanic) both of whom claimed to only been Medical Observers.

66. These Defendants actions (or Lack Thereof) failed to asure Plaintiffs Health, Safety, Welfare and Wellbeing due to their "Callous Disregards for Plaintiffs obvious Serious Bodily Injuries and Subsequental Medical Treatments to Save Plaintiffs Life.

67. Defendant "Tom Case", whom was assigned as the Third Watch (3rd/W) facility "B" program sergeant and was so assigned in that capacity on July 12th, 2013, and whom had prior previous foreknowledge of Plaintiff reporting to him Personally regarding Plaintiffs Urgent Need and Request for a cell move as Plaintiff and inmate Johnson were "Uncompatable", as per defendant Tom Case's CDCR -837 Crime/Incident Report stated verbatim: "He had visually seen and recogn-

-ized on the surface the extent of Plaintiffs Injuries, as per his verbatim statements: Inmate Bailey, #T-76513 was "Unconscious" and "Unresponsive", with BLOOD COMING FROM HIS FACE AND HEAD..."There was A SIGNIFICANT AMOUNT OF BLOOD ON THE FLOOR UNDER BAILEY'S HEAD"..."STAFF SLID BAILEY FROM THE CE-LL...AND LIFTED HIM ONTO THE GURNEY AND ESCORTED HIM TO "BRAVO" CLINIC... BAILEY'S INJURIES WERE OF SUCH A SERIOUS NATURE THAT HE WAS SENT TO THE IN-STITUTIONAL TRIAGE TREATMENT AREA (T.T.A.) via INSTITUTIONAL AMBULANCE AND SUBSEQUENTLY SENT TO ANTELOPE VALLEY HOSPITAL FOR (A HIGHER LEVEL) TREATMENT

68. Defendant "Tom Case", was knowingly, intentionally, and maliciously Deliber-ately Indifferent to Plaintiffs serious medical needs as he allowed for his officers under his direct supervision and authority, slide Plaintiff out of cell B-3-107, allowing defendant "M. Moz" to put handcuffs on a "Unresponsi-ve", "Unconscious" and "Comatose" Plaintiff with Serious Head Injuries and Facial Injuries, ,instead of having the CSP-LAC's institutional Ambulance respond to the Facility "B"-"3" housing unit and carry out the medical duti-es of medical personnel to take Plaintiff to the facility "B" yards mini Me-dical Clinic, instead of the Emergency Room-Triage Treatment Area/Center as so Plaintiff could obtain the urgent emergency medical treatment(s) that st-aff on facility "B" medical clinic knew they had "NO-WAY" of providing to Plaintiff.

69. Thereby, has contributed to Plaintiffs Deliberate Indifference to Plaintiffs Serious Medical Treatment Services and Care, as also failure to protect Pla-intiff due to allowing for a inmate that has a history of "Physical Alterca-tions" and "Conflicts with just about EVERY CELLMATE HE'S BEEN ASSIGNED TO LIVE WITH"...And to "Viciously Assault and Batter" Plaintiff t othe Degree of Plaintiff almost losing his life (AS SO MANY OTHER HAVE WITHIN THIS INSTI-TUTIONAL FACILITY) and Plaintiff being within a Coma an estimate of 7-to-10 days.

70. Defendant "A. Martinez", whom was at all times mentioned herein employed at CSP-LAC, and was the facility "B" program lieutenant on third watch (3rd/W) on July 12th, 2013, and with prior and previous foreknowledge of the uncompatability issues between Plaintiff and inmate Johnson failed to investigate and to remove the threat of "Safety and Security" of Plaintiffs welfare and wellbeing, and only "Retaliated against Plaintiff" when Plaintiff complained about his safety concerns with inmate Johnson, and had made such remarks to Plaintiff as Plaintiff being a "Sexual Predator" and Plaintiff and Johnson would get along as they both were "Birds of the Same Feather" yet, intentionally refused to seperate Plaintiff away from inmate Johnson while knowing a potentially threatening problem exisited.

71. Furthermore, defendant "A. Martinez", was at all times mentioned herein, knew that inmate Johnson was a participant within the "Mental Health Delivery Services System", at the "Correctional Clinical Case Management System (Otherwise known as "triple C-ms") level of care, and states within his CDCR-837 Crime/Incident Report, Part A-1 "Supplemental" Verbatim: Officer Daniel L. Lueridan approached the cell and observed what appeared to be BLOOD coming from under "the cells door....and that Plaintiff Inmate Bailey (#T-76513) was laying by the cell door in an "Unconscious State"...Inmate Bailey was laying in a "POOL OF HIS OWN BLOOD, WITH BLOOD ON HIS FACE AND HEAD AREA"...

72. That responding (Custody) staff removed inmate Bailey from the cell and Placed on a gurney...and was taken to B-Medical, Inmate Bailey was subsequently referred to Antelope Valley Hospital, "NO CDCR-7219 MEDICAL REPORT OF INJURY OR UNUSUAL OCCURRENCE WAS COMPLETED"...

73. THIS IS IN TOTAL CONTRADICTION TO ALL OTHER SUBMITTED CDCR-837 REPORTS...As Plaintiff was evaluated in the facility B-3 housing unit, then taken not to the prison main hospital, but to been taken by gurney (Not Emergency Vehicle) to the facility "B" yards mini medical clinic, had to await for defendant

"Alfredo Diaz", to go check-out a still camera from central control, come back to the facility "B" medical clinic, take pictures of Plaintiffs injuries, all the while Plaintiff had to await a institutional ambulance to come to the facility "B-Medical Clinic" to take Plaintiff to the prisons correctional treatment center (C.T.C.), Emergency Room-Triage Treatment Area, and then await the arrival of the Los Angeles County Fire Department and eventually "American Medical Response" (AMR) Ambulance arrived to depart with said Individuals and Plaintiff at claimed "15:10 hrs.

74. Therefore, from 14:28 hrs (2:28 P.M.) up untill 15:10 hrs. (3:10 P.M.), just 18 minutes shy of 60 minutes and/or "One-Hour" Plaintiff had to await Medical Treatment and per Defendants "L. M. Sears", Investigative Services Unit (I.S.U.) officer K-9 #1, correctional officers have taken (15) "Fifteen" Photos of Plaintiff and all during the course of this transpiring medical personnel "FAILED" to file and fill-out the Mandatory CDCR-7219 Medical Report of Injury or Unusual Occurrence Form.

75. This also contributed to the "Deliberate Indifference to Plaintiffs Serious Medical Needs", in that the unnecessary intentional delays said defendants rendered Plaintiffs Urgent-Emergency Treatments, Services, and Care. What this defendant and the named correctional officers listed herein under the authority did was to act like Plaintiff was some kind of "Freak" within a circus side show and every state Correctional Officer and Medical Staff Personnel did everything except what they were sopposed to do for a Prisoner suffering from Life Threatening Injuries that they all seen on the surface yet, took very "de minus" to "No Precaution" in the mandated emergency treatment, services, or care that should have been rendered to Plaintiff had it been one of their own officers suffering such injuries, you could lay 10-to-1 odds that they would have landed a "Life Flight" Helecopter on the facility's yard (or somewhere very nearby) to render Emergency Aid to their own,

and expidite transporting their own for urgent emergency care or the "AMR" Ambulance transport services would have been waiting to transport one of their own at the Correctional Treatment Center (C.T.C.) Emergency Room-Triage Treatment Area with a Doctor on standby, as soon as they'd discovered the condition of their officer, yet, these defendants all employed exceptionally different standards when they were dealing with Plaintiff.

76. It is a well known fact that CDCR and as relevant to this correctional institutional facility at CSP-LAC disregarded Prisoners/Inmates safety and security especially when it comes to protecting prisoners from assaults by their cellmates when it's reported to housing unit custody staff and facility housing unit supervisors, and to support this fact of these "Exact Same Incidents Transpiring" "REPEATEDLY" and yet, No Safegards or Precautionary Measures had or have been instituted.

77. As per the News Paper Article that appeared in the "Antelope Valley Press" on "Thursday, March 29th, 2007 by Valley Press Staff Writer Ms. Veronica Rocha, (VERBATIM) Lancaster-Sheriff's homicide detectives were investigating the DEATH of an inmate who sustained head injuries during a fight Tuesday with his cellmate at the California State Prison-Los Angeles County Authorities said.

The deceased was identified as "Robert Baker" 47, by lt. John Kades at the Los Angeles County Department of Coroner.

Baker was airlifted Monday to Providence-Holy Cross Medical Center in Mission Hills after he was Critically Injuried when he and his 45 year old cellmate fought at the Maximum Security Prison, near 60th Street-West and Avenue-J. said C. R. Carson, litigation coordinator for the prison.

The inmate was pronounced DEAD...at 12:05 P.M. Tuesday at the Hospital, Carson said.

Baker, who arrived at the prison August 9th, 2000, was sentenced to serve 18-years and 4-Months for "One Count" of "First Degree Burglary", he said.

His cellmate, who officials deemed a suspect in the inmate's DEATH, arrived at the prison May 12th, 2005, and was serving a 14-year sentence for "Corporal Injury to a Spouse". The States prison's Investigative Services Unit (ISU) was also looking into the inmates DEATH.

Last year, (2006), "Two" (2) inmates were reported to have DIED in their

their cells at the state prison.

Robert Painter, 59, DIED of BLUNT FORCE TRAMA January 2nd, 2006 after a fight with a cellmate, Michael Andrews, 41, the sole suspect, was serving at least 25 years on a three-strike conviction and is set to appear before a parole board in 2020.

Claude Wright, 65, DIED BY BLUNT FORCE TRAUMA OCTOBER 5th, 2006, AFTER HE WAS HOSPITALIZED IN SEPTEMBER FOLLOWING A "B E A T I N G" SUSTAINED AT THE STATE PRISON.

78. As these incidents ranging from 2006, 2007 and still "Six (6) Years Later", supports that these defendants individually and official capacities have been "ROUTINELY DELIBERATELY INDIFFERENT TO PRISONERS/INMATES TO INCLUDE PLAINTIFF "BAILEY" SERIOUS MEDICAL NEEDS, AS ALSO SAFETY AND SECURITY" ESPECIALLY WHEN THEY HAVE FOREKNOWLEDGE OF EVER PRESENT SECURITY CONCERNS OF IT'S PRISON INMATE POPULATION-SPECIFICALLY AS IT RELATES TO PLAINTIFF WHOM NOT ONLY INFORMED DEFENDANTS "ALFREDO DIAZ", "DANIEL L. LUERIDAN", "TOM CASE", AND "A. MARTINEZ", OF THE UNCOMPATABILITY OF HIS CELL SITUATION TO NO AVAIL...

79. Plaintiff was forced into celling up with inmate Johnson whom said defendants by way and pretenses of ever looming threats of a few "Disciplinary Rule Violation Report(s) to include but not limited to the following: Threatening Staff, Failure to Obey a Direct Order, Obstructing/Delaying a peace officer in the proformance of their duty, Refusal to accept assigned housing/Refusing a Cellmate to name a few.

80. On July 19th, 2013, while Plaintiff was still comatose he had a Special Emergency Health Care Placement Oversight Program (HCPOP) Committee Action whereas, Plaintiff had to receive a Higher Specialized Level of Medical Care (LOC) Placement, relevant to Plaintiff Serious Medical Needs, Treatments and Care through the Lancaster California Correctional Health Care Services-Utilization Management (CCHCS-UM) into a appropriate Specialized Medical Bed Commensurate with the Inmates patient case factors provided by institutional staff, the attributes of the institution, "LOC" (Level of Care) determination from CCHCS-UM, HCPOP in unison, with CCHCS-UM determined that the inmate-

Patient shall be transferred to CCI. Furthermore, the cdcr-128G Endorsed CCI -III Override OHU (Out patient Housing Unit) specialized Medical Bed. Should a change occur in this inmate-patient's LOC level of care wherein an alternate specialized medical bed is not available at current institution, contact HCPOP. Upon completion of treatment, this inmate-patient is to be returned to sending institution if appropriate (See cdcr-128-G Health Care Placement Oversight Program Chrono, dated July 19th, 2013) This was facilitated by correctional counselor "three" (CC-III) "J. Gaskin with case conference with Capt. "J. Powell".

81. Plaintiff's injuries consist of the following: "Neurological Status": per the cdcr-7202 Admission Assessment: Level of Consciousness; Alert, Confused, Slow to Respond/Comprehend, Lathargic, history of seizures, Unknown; Sensory limitations, speech elimination, Uniary Incotinence/diaper (Check 3x QD), Functional Status;(Level of Self Care) Mobility Limitations, walking, standing, transfer, turning in bed, stairs, generalized weakness-upper extremity left side, lower extremities Right and Left Side, Assistance Required: Hygiene/grooming skin: Top of Head=cuts and dry blood and healing cuts to upper forehead, forehead cuts, nasal; 3-sutures, Overall assessments "Plaintiff" 36 years old alert but slow /confused and lethargic, Male brought via ambulance/___to CCI SHU S/P State Prison TBI Gear___weakness to upper and lower extremities. Inmate Patient has diaper and needs assistance care with sitting up, standing or ambulating/tion (On ground to prevent injuries, water, urinal placed within arm reach. Inmate-Patient assessed upon arrival by MOD, wedge placed under upper body for aspriation precaution L5 clear R-eye glucoma, L-eye slow t otrack HT-RRR, BS:xt will know later WNL. This report completed by CCI Tahachapi doctor Ortega.

82. Plaintiff was transfered to CCI Tahachapi on July 19th, 2013 at which time Plaintiff was again transferred back to Calif. State Prison-Los Angeles Coun-

-ty (CSP-LAC) Lancaster via LAC Special Transportation Unit. Defendant "A. Martinez" "falsely alleges and frabricated documentation upon Plaintiff's arriving back within that facility-and instead of being housed within the institutional infirmary's Hospital Bed defendant "A. Martinez" falsifide documents to which a CDCR-114-D Administrative Segregation Unit Placement Notic dated August 16th, 2013, stating Verbatim: "A review of your Central File indicates that you were previously housed in administrative segregation at CSP-LAC for being the victim of a battery with serious bodily injuries that occurred on July 13th, 2013 (7/13/13) You are being placed in administrative segregation pending the completion of the investigation into the above incident, and an ICC review to determine your appropriate housing and programming needs. Your Credit Earning, privilege group and visiting status may be affected by this placement. Inmate Bailey is not a participant within the Mental Health Delivery System (MHSDS) which this lock-up order issued upon Plaintiff to discourage Plaintiff in seeking legal redress, as this "Lock-Up order is/was just another ploy and continuation of the "Retaliation", "Reprisal" against Plaintiff to discourage Plaintiff in seeking legal redress on these defendants "Failure to Protect" Plaintiff after he made it known repeatedly that he was not compatable with inmate Johnson.

83. Furthermore, as Plaintiff was on the General Population-Main Line (Modified Program) AND HIS HOUSING UNIT OF FACILITY B-3-107 was not and ADMINISTRATIVE SEGREGATION BUILDING, NOR HAD PLAINTIFF EVER BEEN PLACED IN OR ON ADMINISTRATIVE SEGREGATION STATUS. And upon defendants reckless disregards for Plaintiffs safety, security welfare, and well being when these defendants knew a problem exisited with himself and inmate Johnson whom is a mental health participant, and a Known Violent predator with several assaults and numerous repeated conflicts with just about everyone he's been in the cell with, knew well in advance what would happen to Plaintiff if he were to be celled with

inmate Johnson. Infact, Defendants and CSP-LAC custody administrators on facility"B" had knowingly, intentionally, and maliciously falsely had Plaintiff designated as a "SEXUAL PREDATOR" with a "Restriction Suffix" ("R"-Suffix) on Plaintiffs Central Files (C-Files) and not only did they express this to inmate Johnson of this "Fabricated/Falsifide Sexual Predator Classification" but these defendants "Diaz","Lueridan", "Case" and "Martinez"and John and Jane does 1-thru-10, repeatedly taunted and harassed Plaintiff about it and had told Plaintiff that in due time, they would show him what they could have done to "Sexual Predators" and "Perverts", hence, the attack upon Plaintiff to which was within inches of Plaintiffs life, by easily influencing a severly mentally (Allegedly) incompentent inmate Johnson.

84. Furthermore, Plaintiff's Placement within the Solitary Confinement, Punitive Administrative Segregation Restrictive Housing Unit upon his returning back to CSP-LAC from CCI-Tahachapi Medical Bed, for being "Victimized" by inmate Johnson, and in no way,shape, or form upon being transferred backto said prison after coming out of a life endangering "COMATOSE STATE", and suffering from the after effects of this "Extremely Brutal and Vicious Beating" while Plaintiff had been in a state of sleep, and for this he now suffers Permanent Brain Damage, Physical and Mental/Emotional damages for obeying defendants "DIRECT ORDERS TO MOVE IN THE CELL WITH AND UNCOMPATABLE INMATE...OR ELSE, FACE THE WRATH OF VINDICTIVE CORRECTIONAL PEACE OFFICERS"...

85. And because Plaintiff went against his better judgement, Plaintiffs natural life is forever changed. and as Plaintiff did not pose a threat to himself, the CSP-LAC institutional facility, nor to other's which is the basis for Placing a inmate/prisoner within restrictive Solitary Punitive Segregation yet, instead this was defendants way to harass, retaliate and discourage Plaintiff for seeking to iniciate "Legal Action" for the blatant violation of Plaintiffs Constitutional RIGHTS under the United States and the State of

California. Especially when the incident was over a month old (30-Days).

86. This Restrictive Placement within Restrictive Punitive Solitary Disciplinary Confinement within their Administrative Segregation for Plaintiff being "VICTIMIZED", subjected Plaintiff to treatments and conditions that "IMPOSED UPON PLAINTIFF AN "ATYPICAL AND SIGNIFICANT HARDSHIP IN RELATION TO THE ORDINARY INCIDENTS OF PRISON LIFE". AND WAS IMPOSED UPON PLAINTIFF WITHOUT ANY FORM OF "DUE PROCESS" AFFORDED TO PLAINTIFF WHOM SUFFERS FROM NOW ON A TRAUMATIC BRAIN INJURY AND SEIZURES, LOSS OF MEMORY AT TIMES, CONFUSION AND PARANOIA SCHIZOPHRENIA FOR THE REST OF HIS LIFE DUE TO THE RESULT OF BEING SAVAGELY AND BRUTALLY BEATEN WHILE HE SLEPT.

87. AS THE "DUE PROCESS CLAUSE" of the "Fourteenth Amendment" prohibits "A State or its State Entites" and/or "Employees Acting in the Capacity of and on Behalf of the State of California, Department of Correction and Rehabilitation" from depriving any Person "OF LIFE, LIBERTY, OR PROPERTY WITHOUT DUE PROCESS OF LAW". Plaintiff has a substantive Right to proceedural "Due Process" which includes but not limited to Mean: That the Person MUST provide Plaintiff with some amount of protection (Like a Hearing or Notice) BEFORE THE PRISON DOES SOMETHING THAT HARMS PLAINTIFF'S LIFE, LIBERTY OR PROPERTY.

88. DISCIPLINARY PLACEMENT WITHIN THE PRISON'S SEGREGATION HOUSING UNIT, TRANSFER'S TO DIFFERENT PRISONS, LOSS OF GOOD TIME CREDITS ARE ALL THINGS DEFENDANTS HAVE DONE TO PLAINTIFF THAT HAVE VIOLATED PLAINTIFF'S "DUE PROCESS" WHEN THEY HAVE/HAD BEEN DONE ADVERSELY, PUNITIVELY, AND WITHOUT JUST CAUSE NOR "DUE PROCESS" UPON PLAINTIFF'S TRANSFERRING BACK TO CSP-LAC.

89. Plaintiff asserts that he has a "Liberty Interest" in that the prisons actions have/had interfered with plaintiffs "Ordinary Incidents of Prison Life" and violates Plaintiffs protected United States Constitutional Amendment Rights, as also Plaintiffs Rights Under The Constitution of the State of California, that is to protect Plaintiff from Reprisal, Retaliatory Adverse

and Punitive actions which amounted to "Cruel and Unusual Punishments" done for a "Sadistical Purpose" in the prison efforts to discourage Plaintiff from seeking out legal redress of these stated Constitutional Rights Violations, that resulted in Plaintiff conditions of confinement that resulted in being excessively much worse than is normal for any Prisoner that has been a victim of a Viciously Brutal Attack resulting in permanent serious bodily injuries. "As the defination of "Atypical" means that Plaintiff has/is being treated very differently than the way most prisoners are treated" and "Significant Hardship" means: That treatment Plaintiff was inflicted with by defendants "A. Martinez", has been really awful, not just uncomfortable or annoying.

90. The treatment that were/was inflicted/imposed upon Plainitff was not anywhere near or remotely close then other prisoners treatment and said treatment was "NOT RATIONALLY RELATED TO A LEGITIMATE PENALOGICAL INTEREST OR GOVERNMENT PURPOSE.

92. It is Plaintiffs sincere beliefs that he was placed within Administrative Segregation and eventually transfered to Salinas Valley State Prison in Soledad California as a "Punitive Punishment" for his complaining and filing Administrative Grievances Appeals regarding the Malicious and Intentional Theft of Plaintiffs real, legal, personal, and miscellaneous property that had been secured by a "Pad Lock" on Plaintiffs cell upon the transpiration of these events so stated herein, as also for Plaintiff filing administrative grievances appeals for Defendant(s) Chander P. Malhotra's "FAILURE TO PROVIDE PLAINTIFF THE BASIC NECESSITY OF MEDICALLY ORDERED TREATMENT, SERVICES, AND CARE AND TO DISCOURAGE AND KEEP PLAINTIFF FROM FILING THIS LAWSUIT.

93. Furthermore, Defendant "A. Martinez" Knowingly, Willfully, Intentionally and with Malicious forethought and had his officers within the administrative Segregation housing unit (John and Jane does 1-thru-10) remove Plaintiffs ortho-

pedic walker as course of intimidation and reprisal/retaliation which is in direct violation of CDCR's Directors Rules and Regulations of the California Administrative Codes and Regulations for Adult Institution (CCR) Title 15. (Crime Prevention and Corrections Division #3) Article 8. Medical and Dental Services, Section §3358 Artificial Appliances (a) Appliances Catagories and (b)(in part) Which states Verbatim: Possession of Appliances. "No Inmate shall be DEPRIVED OF A PRESCRIBED ORTHOPEDIC OR PROSTHETIC APPLIANCE"...In the Inmate's possession upon arrival into the department's custody unless a department physician of dentist determines the appliance in no longer needed and the inmate's personal physician, if any concurs in the opinion.

94. This also amounts to "Deliberate Indifference to Plainitffs Serious Medical Needs", and "Cruel and Unusual Punishment" by defendant "A. Matrinez", and these officers he had directed to take away and/or remove Plaintiffs Orthopedic Walker for which Plaintiff needed as so he couls "Ambulate" around within his assigned Ad-Seg cell in which Plaintiff had to "Crawl Around" due to his equailibrium being off canter.

95. As defendant "Johnson" (first initial is unknown to Plaintiff at this time) The captain on duty on August 16th, 2013 stated to Plaintiff upon his being notified of Plaintiffs return from CCI-Hospice Care within the Tahachapi State Prison came to see Plaintiff within their prison administrative segregation housing unit and to Plaintiffs recollection stated verbatim: "So your One of the Few Survivers, and yea, we know we all "FUCKED-UP" with you...So were expecting some kind of legal action against us, because we've already recieved numerous phone calls from Plaintiffs family specifically Plaintiffs "Mother", whom made it very clear from the point she found out about what transpired with Plaintiff up untill the time Plaintiff had gotten transfered back to Salinas Valley State Prison.

96. Plaintiff asserts that from the day he was returned back to CSP-LAC Plaintiff was/had been retaliated against, harassed, and was the victim of defendants and their co-workers (John and Jane does 1-' thru-10) ongoing reprisals to which amongst other threats and tactic's, Plaintiffs walker being confiscated without justification nor provocations by the administrative segregation unit sergeant and several of his officers without medical approval by a Licensend Medical Doctor or Chief Medical Officer as mandated under prison rules and regulations so cited within Article 8. Medical and Dental Services, section §3358(b).

97. Plaintiffs wheelchair had been also removed from Plaintiffs cell forcing Plaintiff to crawling on the cell floor to ambulate when needind to use his toilet, recieve his food through the food slot within the ceels door, which Plaintiff had to hold onto the cells walls when his balance was not off canter and to retrieve Plaintiffs toiletries when supply day came around.

98. Thereby, said defendants actions imposed upon Plaintiff whom suffered from the effects of the Traumatic Brain Injuries and many other Physical Limitations amounts to Deliberate Indifference to Plaintiffs Serious Medical Needs, and Cruel and Unusual Punishment in Violation of the United States and California State Constitutions.

99. Plaintiff further asserts, that Lancaster State Prison Correctional Administrators in furtherence of their retaliatory and reprisals to intimidate and discourage Plaintiff from seeking such "Judicial Intervention and Redress of grievances, Knowingly, Willfully, Intentionally and Maliciously stoled/misappriated Plaintiff's real, personal, legal and miscellaneous property in their collective joint efforts to disuade/discourage plaintiff from filing legal action(s) against said defendants in that on August 9th, 2013, Defendants "F. Castrc" and "Daniel L. Lueridan", packed both inmate Dominic Johnson, #AK-5828 and Plaintiffs property after the cell was determined to no longer being

a crime scene. Due to the vicious and brutal attaqck upon Plaintiff that resulted in Plaintiff being left in a coma, he could not ascertain the alleged property documented upon the CDCR-1083 Inmate Property Inventory Form.

100. Upon Plaintiff being issued his property on October 5th, 2013, Plaintiff had noted/noticed that a majority of Plaintiffs property that had been in the cell on July 12th, 2013, was unaccounted for and missing. As Plaintiff suffered "Sever Traumatic Brain Damages/Injuries" asa a result of the attack on Plaintiff, the Right Side of Plaintiffs Brain recieved damages so on November 10th, 2013, Plaintiff filed one of Three (1-of-3)Property Grievances, this being the "Third" (3rd) of such grievance appeals due to the two previous filed/submitted 602 grievance appeals never being processed and/or responded to.

101. This 3rd appeal log Number #LAC-B-13-03570, was claimed to have multipal issues and due to Plaintiffs Right Side Brain Damages, the CSP-LAC appeals coordinator, Defendant "B. Harris", was to assist Plaintiff to Articulate his grievance appeals issues. This is in accordance to (CCR) Title 15. §3084.1.(c)(d) as Plaintiff at this time was having problems communicating what his property issues were, and because the staff complaint and property theft "Arised from the very same set of facts and issues from the "Single Incident" Plaintiff was entitled to assistance in clarifying his issues contained within his property and staqff complaint grievances.

102. On or about January 21st, 2014, Plaintiff was called/summoned to the facility "B" program office whereas Plaintiff was "Interviewed by way of Intimidation Tactics". Upon Plaintiff arriving within the facility "B" program office, Defendant "P. M. Carranza", the acting sergeant on facility-B. Upon Plaintiff going into the program office of "B" facility Plaintiff had informed defendant "P.M. Carranza", whom was in the presence of several other sergeants within the program office, to which was also done in these defendants

joint efforts to intimadate Plaintiff whom is now required to ambulate by wheelchair for any extended journeys and/or distances as Plaintiff becomes "Dizzy and Confused" sometimes and loses his sence of balance at times as he would need to sit down and come out of this fog he sometime endures, Therefore, the wheelchair is a permanent accomodation for Plaintiffs path of travel(s).

103. As Plaintiff knew he could not defend himself if these defendants chose to assualt and batter Plaintiff once again outside the presence of any inmate witnesses. Upon the grievance appeal interview being started, Plaintiff had did his best to attempt to articulate his issues within the grievance appeal, But, defendants "F. Castro" and "Daniel L. Lueridan" was/were requested by Plaintiff to be called as they were the one's whom packed up all Plaintiffs property, that a substantial portion of was unaccounted for and Plaintiff had a right to call and inquire about his "stolen property" of the two defendants. It should also be made known that these defendants were the only individuals of whom had access to the property within the cell "B-3-107", as (I.S.U.) states that within their CDCR-837-C1-Staff Report(s) of defendant "J. Johnson", whom had taken the photographs of Plaintiffs Cell, as defendant "J. Johnson" was one of the several Investigative Services Unit Office ers (I.S.U.) whom processed the cell for evidence.(Hence the crime scene with and in the presence of (I.S.U.) officer Defendant "R. Humenik", whom were not called by defendant P. M. Carranza, even though their 837's crime incident reports states verbatim: "R. Humenik" secured cell B-3-107 with a I.S.U., pad lock.

104. Plaintiff had requested all these officers to be called to this interview and that the photographs taken of the cell showing what was within it prior to both Prisoner Bailey and inmate Johnson being removed, and therefore Plaintiff had requested that if sergeant P.M. Carranza would not call these in-

dividuals, then at least retrieve the photograph of the cell which would show the contents of the cell which was within their digital camera.

105. Defendant "P. M. Carranza", refused to honor this request of Plaintiff by either contacting these defendants by way of institutional radio, or by the landline telephone within the sergeants office, this way Plaintiff could articulate himself and present his issues raised within his grievance appeals, all three (3) of them would more then likely refresh Plaintiff memory, But instead of attempting in a good-faith effort to assist Plaintiff in locating his property, and thereby resolve the property grievance appeals, defendant "P. M. Carranza", along with the other "Three sergeants" within the program office only sought to "Frastrate and Confuse Plaintiff" by way of their trying to force Plaintiff to remember "Exactly what was in His Cell" the day of his vicious and brutal beating, and knowing that Plaintiff had been in a "Comatose Stae" for approximately 7-to-10 days and having permanent Right Side Brain Damage and problems with his recollection of events "Though...Plaintiff DOES NOT want this Honorable Court to think he's equal to or equivalent to a "Brain Dead " individual or a "Vegetable State" and doesn't have full usage of his facilities, it's just that he does have brain damage and certain events ellude Plaintiff when he attempts to remember them and defendants "P. M. Carranza" knew of this, and attempted to lock Plaintiff into making contradictory statements, then having his "Posse of officers writing out and signing CDCR-128-B informational Chronos of what they had just witnessed Plaintiff stae during this interview to utilize against Plaintiff.

106. Plaintiff asserts that each and everytime he's requested certain correctional staff members to be caled to get to the "Truth of this Matter", to support his related facts within these filed 602 (CDCR) grievance appeals, Defendant "P. M. Carranza" denied Plaintiffs request, in which Plaintiff had

become "Short Tempered" and "Frustrated" because he realized what these defendants "sgt. P. M. Carranza"and his "crony's" were attempting to do their best not to resolve this appeal grievance, and by not contacting or calling any one of these defendants that had "First Hand Knowledge" as to what happened to Plaintiffs property nor anyone to assist Plaintiff to articulate his position regarding this property grievance appeal that was claimed to have "Mixed Issues".

107. On or about November 2013, the officer within Central Recieving and Release (Herein After R&R) had located/found Plaintiffs Digital Television, and had returned said item of property to Plaintiff but when Plaintiff brought this to defendant "P. M. Carranza's" attention, defendant stated that he would not be reimbursted for his own Intentional and Carelessness acts yet, Plaintif had found out that inmate whom assaulted Plaintiff while he layed asleep on July 12th, 2013 "D. Johnson", had also (Allegedly) filed a grievance appeal regarding his own property claiming missing property had his CDCR-602 grievance appeal "GRANTED" and had been compensated with numerous property items claimed to have been "Donated" to the prison by other inmates...But in essences, said donated property usually be that of which inmates have filed grievance appeals to be returned to them, yet, the CSP-LAC just stole from inmates like Plaintiff and issued to other Inmates as compensation to resolve their property grievance appeals.

108. Plaintiff was told that his statements could not be verified, and therefore, his property appeal and stasff complaint appeals were "DENIED" at the first level. Plainjtiff had provided to sgt. "P. M. Carranza" his copy of his vendor Package reciept(s) and property items in question, and copies of his CDCR-1083 property inventory reciept(s) showing he possessed the property that had been in the cell prior to his being attacked and the cell becomi g a crime scene. Yet, defendant "P. M. Carranza" did nothing except to agitate and fru-

-strate Plaintiff, this was done in the presence of the two other sergeants that defendant "P. M. Carranza" had as his witness (John and Jane Does, 1-thru-10). Plaintiff had inquired as to why so many sergeants where at his property grievance appeal and staff complaint grievance(s) hearing at which time Defendant "P. M. Carranza" stated that Plaintiff's property grievance appeal was written up as a staff complaint, and this is how they proceed with Inmates staff misconduct complaints.

109. Furthermore, Plaintiff was told all the sergeants that had be in attendence of his interview all wanted to know what transpired since Plaintiff knew so much about CDCR-Administrative Protocol's for a fact finding hearing and Plaintiff (Admits) that he became extremely frustrated, angry, and billigerent and verbally abusive towards sgt. "P. M. Carranza", whom then stated to Plaintiff, "Lets get to your property issues!" It was at this exact moment defendand "P. M. Carranza" stated to Plaintiff if "He planned to sue CSP-LAC about what happen to him and his officers involved with this whole incident, and since he felt that Plaintiff would infact be sueing them he couldn't help Plaintiff locate his property items that he would just have to have the courts order compensation and/or replacements of Plaintiffs property.

110. Plaintiff asserts that soon after this exchange of verbal josting, defendant sgt. P. M. Carranza stated that he knew Plaintiff was a "Pedophiler" and read up on it within Plaintiff's Central Files (C-Files) that Plaintiff was designated as a "Sex Offender" and that he (Carranza) don't like "Sex Offenders" and evendentually his old cell mate "Johnson" whom was also said to been a "Sex Offender" but he has an excuse, due to his having mental health problems I guess he wanted to be the only sex offender in the cell, and then sgt. P.M. Carranza stateds to Plaintiff "I thought all Sexual Perverts got along", thats why they had put Plaintiff in the same cell as Johnson. Furthermore, defendant "P. M. Carranza", went on to say that inmate Johnson gave Plaintiff what he

deserved and again, started to laugh with the other sergents within the facility "B" program office, then stated to Plaintiff that he was "Dismissed".

111.Plaintiff asserts that soon after this exchange, He'd again became verbally billigerent towards defendant Carranza, and at this time, sgt. P. M. Carranza had Plaintiff removed, "pushed out" of the facility "B" program office and terminated the 602 grievance appeal hearing/interview.

112. Upon Plaintiff being wheeled out of the program office several inmates on the facility yard seeing Plaintiff be wheeled out under escort by "Four to Six" (4-to-6) other officers to the yard this included the "Three" (3) sergeants at the 602 grievance hearing interview. Said inmates on the facility "B" yard had asked Plaintiff "What Happen"? "What was Going On" that Plaintiff was mad about? (Going Off) Plaintiff said that these other sergeants and sgt. "P. M. Carranza", were basically attempting to utilize intimidation tactic's that Plaintiff is a "Sex Offender" that was when it was made known to Plaintiff that the correctional officers (John and Jane does 1-thru-10) had been telling inmates on the "B" facility yard that Plaintiff was a Sex Offender, and what if anything the inmates on facility "B" going to do about it? But Plaintiff was limited as to what actions he could take.

113. Throughout this whole ordeal from start to finish, defendant "B. Harris" whom is the CSP-LAC Appeals Coordinator (One of Several) kept obstructing and hindering Plaintiffs right to appeal by "Screening-Out" / "Rejecting" Plaintiffs filed/submitted 602 grievance eappeals, claiming Plaintiff was listing multipal issues within "One Grievance Appeal", thereby "CHILLING" Plaintiffs efforts to seek and achieve full exhaustion and adjudication of his appeal grievances. Plaintiff had continuously explained that all issues related t ohis filed grievances appeals were the direct result of a single issue that transpired from the beating of Plaintiff on July 12th, 2013, but Plaintiff was repeatedly threatened with cancellations and rejections of his

"Staff Misconduct/Citizen Complaint" Log Number: LAC-B-13-04107, and later changed to a different issue of being a classification appeal grievance regarding "A Single-Cell" issue only, and that because said "Single-Cell" issue had been previously resolved, and "GRANTED" that Plaintiff could not recieve any further relief.

114. Defendant "B. Harris", being "Well Aware of Plaintiffs Traumatic Brain Injury" repeatedly rejected Plaintiffs grievance appeals based upon claimed appeals technicallities. Yet, each of these claimed technicallities also were the result of a single issue on July 12th, 2013, and because of these multipal due process violations, and administrative action that raise to the level of "Constitutional Violations" for which said named defendants and numerous unnamed/unknown defendants "Deliberate Disregards to their very own Policies, Procedures, Rules, and Regulations in a collaborated joint effort to stagnate Plaintiffs submitted grievance appeals and intentionally obstructing and delaying the inmate grievance appeals processing of said grievances submitted so Plaintiff could not seek and/or obtain judicial review and redress due to not fully exhausting Plaintiffs administrative remedies, that had been made "Unavailable" to Plaintiff.

115. Plaintiff asserts that due to these "available administrative remedies " no longer being available t oPlaintiff then the "Exhaustion Requirement of the prison litigation reform act (P.L.R.A.) is/should no longer be rerquired. This is supported by the "Numerous CDCR-695's Appeals Screen-Out Forms" that had been attached to Plaintiffs 602's grievance appeals Log Number: LAC-B-13-04107.

116. The "Two" (2) specific CDCR-695 screen-out responses are dated: #1.) February 26th, 2014, which states "Verbatim"(in Part) "Your appeal has been rejected pursuant to Calif. Codes of Regulations title 15.

Section §3084.6.(b)(9), your appeal issue is obscured by pointless verbiage or voluminous unrelated documentation such that the reviewer cannot be reasonably expected to identify the issue under appeal.

"On 8/21/13, Committee elected to clear you for single cell housing Due to Medical concerns. You stated that there are other aspects of this appeal that needed to be addressed" "What specifically do you want addressed". "B. Harris"

117. Due to these multipal issues all being based on a singular event and Plaintiff advised this Honorable District Court that CDCR and defendants "B. Harris" and "Staff Services Analysis (SSA) "D. Cobb", were attempting to have Plaintiffs 602 grievance appeal each one of these alleged "Multipal Issues" and/or "Events" on a singular grievance appeal, "One issue at a time" per appeal all the while knowing that anymore then "Two" (2) of these multipal singular events would not be able to be appealed as a inmate/Plaintiff can only file "ONE" (1) grievance appeal every "Fourteen Days" (14-days), Therefore, defendants "B. Harris" and "D. Cobb" were well aware that any issues aside from the first two issues raised would give them legitimate grounds and/or reasoning and a foundation to reject and cancel Plaintiffs appeal(s) for violation of the time requirement deadline for which Plaintiff must file his appeal(s) under (CCR) title 15. §3084.1.(f)(states Verbatim) "An inmate or Parolee has the right to file one appeal (form) every 14-Calendar days unless the appeal is accepted as an emergency appeal. The 14 Calendar day period shall commence on the day following the appellants last accepted appeal" (CCR) Title 15. §3084.1.(f)

118. Plaintiff advises this court that one of many tactic's these appeals coordinators use to reject/cancel appeals is based on the last paragraph of (CCR) title 15. §3084.1.(f) in that Plaintiff's appeals were being routinely rejected for 7-to-10 days then accepted to being

processed but, now any other issues arising out of this "Singular Event" was rejected and cancelled due to violation of the time restraints in filing his appeal which would have/had placed/put Plaintiff outside the statutory time limitation filing deadline of "ONE" (1) issue on "ONE" (1) appeal every "Fourteen" (14) Days to commence on the day following...The appealants last accepted appeal".

119. CDCR and CSP-LAC Appeals Coordinators are under the impression that they're words smith, and that "all inmates don't realize this word play there utilizing to justifying their cancellation of Plaintiffs (and other Inmates) appeals so that Plaintiff would be prohibited from seeking "Judicial Redress" in accordance with the "First (1st) Amendment of the United States Constitution" and The Constitution of the State of California.

120. Plaintiff further support these contentions by way of another State created document-CDCR-695 grievance appeal(s) screening forms dated April 1st, 2014, by Defendant "D. Cobb" (Staff Services Analysis)(SSA) which is just another name for an appeals coordinator supervisor, In which his reasoning for rejecting the very same appeal log number #LAC-B-13-04107 had been changed from a property appeal to now being designated as a living conditions,("Celling"Single/Double), 3-18-2014, to which states once again "Verbatim": Your appeal has been rejected pursuant to California Codes of Regulations, title 15, Section (CCR) 3084.6. (b)(2). You have failed to demonstrate a material adversed effect upon your welfare. "Material Adverse Effect Means": A harm, or injury that is measurable or demonstrable, or reasonable likehood of such harm or injury. In either case, the harm or injury must be due to any policy, decision, action, condition or omission by the department or it's staff. Now, Plaintiff falls into each of these described catagory guidli-

es which have been established by both CDCR and CSP-LAC administrators in that had these state actors listened to Plaintiff when he originally informed said defendants that Plaintiff and inmate Johnson were not compatable to be living together, and that Johnson's serious mental **health** problems in which has resulted with just about every cellmate he's been assigned to live with. Then the Constitutional Violations of Plaintiffs Rights as so setforth herein would not have occurred.

121. Furthermore, defendant "D. Cobb" goes on to state verbatim:(In His own words)"If you want "Single Cell" and the committee cleared you for Single Cell Housing due to Plaintiffs medical concerns, then you (Plaintiff) got what you wanted..."OR" ARE YOU TRYING TO PUSH THIS APPEAL THROUGH FOR "MONETARY REASONS"? D. Cobb (SSA)

122. This in and of itself shows and proves that defendants knew they were "LIABLE" to Plaintiff for the vicious, brutal attack upon Plaintiffs physical person resulting in Plaintiff's permanent Brain Damages and Physical Injuries to which is an admission of "GUILT", in that staff services analysis defendant "D. Cobb", states or are you still trying to push this appeal through for monetary reasons? This is in all CAPATOL LETTERS AND BOLD TYPE.

123. Plaintiff responded in kind at the bottom portion of this CDCR-695 Screening form indicated for inmates/Prisoners responses to which Plaintiff stated:

> The administrative remedies must be exhausted, I would like to proceed with my rights to exhaust administrative remedies, and have appeals coordinators stop purposely abusing it's authority by hindering (Obstructing) the administrative Inmate Appeals Process.

124. Plaintiff realized that in order to seek monetary damages compensation for these state actors official and individual capacities blatant disregards to Plaintiffs safety, welfare, wellbeing and security that

"You have been given documentation (CDCR-128-G Chrono) showing "AND STATING YOU ARE HOUSED IN A SINGLE CELL; and Plaintiff once again stated in response to these defendants statements: ATTN: Chief, Inmate Appeals, to EXHAUST MY ADMINISTRATIVE REMEDIES, I've forwarded this (Appeal) to your office NOTICE THAT THIS APPEAL GRIEVANCE WAS SCREENED-OUT OVER "SEVEN" (7) TIMES...SINCE DECEMBER 2013 (12/2013) AND EVEN THOUGH IT HAS A LOG NUMBER, IT HAS NEVER PFFICIALLY BEEN FILED. Plaintiff advises this court, that no response was ever provided by the CDCR's Director's level Chief Inmate Appeals Examinator Defendant "J. A. Zamora", whom also knew of the "Monetary Liability" Plaintiff would be entitled to for their failure to protect (Const. Amend. 8th, and 14th) and the intentional theft and misappropriation of Plaintiffs "Real, Personal, Legal, and Miscellaneous Property", that was secured within the cell that Plaintiff had been brutally beaten within by a (I.S.U.) Pad Lock by defendant "R. Humenik" yet, Plaintiff could not obtain the digital photographs of his cell the day this incident had occurred July 12th, 2013, to show it's contents and at all times stated hereein, Lancaster State Prison Correctional Officers and Administrators had "Sole Possession" of Plaintiffs property removed from cell Fac-B-107, yet, to harass Plaintiff, and to discourage Plaintiff from filing this lawsuit/civil rights action, Plaintiffs property had been used as a barginning chip to prohibit Plaintiff from filing this Civil Rights Violations, whereas , Plaintiff had been accosted that if he were to sign a liability "Waiver" chrono stating that he placed no fault on CDCR or Lancaster State Prison and its administrators and correctional officers that they were beyond "Certain...that they could find, and produce Plaintiffs property and return it back to Plaintiff only if he were to

falls into each of the parameters listed above by defendant "D. Cobb" on the CDCR-695 grievance appeals "screen-out" form dated April 1st, 2014, and thereby he and defendant "B. Harris", defendant sgt."P. M. Carranza" did everything within their administrative powers to obstruct, hinder and delay Plaintiffs submitted appeals as so Plaintiff would not be able to obtain "Judicial Review and Intervention" as per the relief Plaintiff requested herein based on Plaintiff not fully exhausting his administrative remedies.

125. Therefore, this also proves said defendants "Consciousness of Guilt" and "Liability" on the part of CDCR and the involved named defendants as also those individuals for which their names and identy are unknown to Plaintiff and this has been proven to this court any exhaustion requirements as they may be related to this Civil Rights Violations should be deemed exhausted as said remedies for full exhaustion had/ has intentionally been hindered and obstructed by said defendants whom consciousness of their GUILT and MONETARY DAMAGES REWARDS Plaintiff should/could be entitled to if this matter was placed within this Honorable Federal District Court and a jury to try the facts of this matters within this case could/would be subtantial.

126. Therefore, defendants "B. Harris", "D. Cobb", are liable for their hindering and obstruction of Plaintiffs legally mandated Constitutional Federal Rights and State of California created rights to allow Plaintiff to fullfill and obtain adjudication of Plaintiffs State Administrative Remedies to exhaustion of Plaintiffs file grievance appeals and thereby, are liable for the damages to Plaintiff according to proof.

127. Lastely, Defendants "V. Powers" and "B. Harris" within their April 28th, 2014, CDCR-695 screening form states to Plaintiff (verbatim)

sign the liability waiver chrono releasing said defendants from any future legal actions. And they would "Sweeten the Agreement" with a little something extra...If Plaintiff signed their pre-drafted liability waiver chrono.

128. This was intentionally done to harass and intimidate Plaintiff whom suffered a permanent Brain Injury and other Physical and Emotional Injuries as a direct result of defendants failure to protect Plaintiff and though Plaintiff does have his "Scruples" about himself even after suffering his permanent traumatic right side brain damages and physical disabilities such as Seizures, Migrain Headach's, Foggy Memories, and Plaintiffs ability to remember or recall/recollect events especially prior to his brain injuries, Plaintiff loses his "Equilibrium" becomes dizzy and have/has "Black-Out's", Restlessness, Anxiety and Anxiousness and several other Medical Problems, and Mental Health problems now which Plaintiff has/had not suffered from prior to the Vicious and Brutal Beating on July 12th, 2013, attack upon Plaintiff while he layed asleep on the top-bed bunk and Plaintiff was to have had the lower bunk bed within cell B-3-107, and Plaintiff has/had a Lower Tier/Lower Bed (Bunk)chrono and because inmate Johnson had stated previously to Plaintiff that he wasn't going to give up his bottom bunk bed, which contributed to the uncompatability issue Plaintiff related to defendants "Alfredo Diaz", "Daniel L. Lueridan", sgt."P. M. Carranza", lt. "A. Martinez" and capt. "Johnson". Yet, said defendants still refused to move Plaintiff saying they had other more important issues to deal with, and that "Convenience Moves" where only done on the weekends, that Plaintiff had to "Tuff it Out" with inmate Johnson for the time being...which in essence turned into about a month (30-days) when the July 12th, 2013, vicious brutal at-

-tack occurred upon Plaintiff and when Plaintiff refused to sign said defendants prepared waiver of liability chrono, defendants, "P. M. Carranza" stated he wouldn't be able to help Plaintiff and was denying Plaintiffs grievance appeals at the first level.

129. Plaintiff upon being transfered to Salinas Valley State Prison in Soledad, California, upon his arrival and having his initial Mental Health Screening Process, The unknown-unidentified Mental Health Clinician on facility "B" in 2014 (Dates are unknown at this time to Plaintiff, whom have attempted to aquire such information for the purpose of these legal process) But the mental health clinician had inquired with Plaintiff if he had any safety concerns, and began asking Plaintiff questions about his being some kind of "Sex Offender" and when Plaintiff confronted them (Mental Health I.D.T.T., Committee Members) the unknown male mental health entity said that in their computer it has something referencing towards Plaintiff being having "Sex Charges", "Crime and/or Conviction(s)" and after this screening process, Plaintiff was taken to Salinas Valley State Prison (Herein After SVSP) Administrative Segregation Housing Unit, but was later "Kicked-Out" to facility "C-7" and at that time Plaintiff confronted Correctional Counselor-One (CCI) "J. Jackson" about the claimed alleged Sex Offense conviction/allegation within Plaintiffs "Central File(s)" also called C-Files, resulting in Plaintiff having a "Restriction Suffix" (R-Suffix) due to a Sexual Related Offense on Plaintiffs arrest /criminal records, when Plaintiff sought to get the information from within his central files (C-Files), he was denied to have access to that infromation.

130. Plaintiff also asserts that once again, upon being taken to his Annual Review-Unit Classification Committee (U.C.C.) for 2017 in 2018

due to it being held late Correctional Counselor-One (CCI) I. Herrera stated to Plaintiff that CDCR Central File Records (C-Files) for Plaintiff, that there's some kind of something in the computer that not good and that Plaintiff should 602 grievance appeal it in order to get it removed fdrom his jacket.

131. Plaintiff is of the belief that the defendant(s) at CSP-LAC Knowingly, Intentionally, and with Maliciously placed falsifide, frabricated information within Plaintiffs Central Files (C-Files) regarding Plaintiff suffering from and being convicted of a "Sexual Offense" due to Plaintiff challenging various named and unnamed defendants regarding certain entitlements Plaintiff is mandated to been provided and had not been given.

132. Due to this Sexual Related Offense (R-Suffix) on **Plaintiff** "C-File" jacket, and Lancaster State Prison Correctional Administrators and Officers dislike of Plaintiff, they had started the claimed "Rumor(s) " of Plaintiff being a Sexual Predator, which Plaintiff feels significantly contributed to **Plaintiff** being severly beatened while Plaintiff slept by a inmate whom suffered claimed mental health problems and was easly influenced and/or manipulated to do the defendants correctional officers bidding with rewarded inmate Johnson with such items like extra state food, property and vendor package food items being give to inmate Johnson for such an attack on Plaintiff.

133. Therefore, Defendants are Liable to Plaintiff for failure to protect, placing Plaintiff in a dangerous situation without any regards for Plaintiffs safety and security especially when Plaintiff made it blatantly clear to these named defendants of the ever presence of a threat(s) to Plaintiffs Life, Cruel and Unusual Punishment(s), Corporal Punishment resulting in Plaintiff sustaining forever life altering/

changing "Traumatic Brain Damages/Injuries" along with Physical and Emotional injuries and damages.

134. On August 19th, 2018, Plaintiff was made aware by Prisoner Edward Thomas, CDC #P-64423, (WHOM IS ALSO THE INDIVIDUAL ASSISTING PLAINTIFF WITH THE PREPARATION AND FILING OF THIS ACTION, AND HAS SUBMITTED HIS AFFIDAVIT STATING THE SAME) had informed Plaintiff that PLAINTIFF was entitled to get copies of all his bed movements since his arrival within the CDCR-system. On or about August 24th, 2018, Correctional Counselor-one (CCI) I. Herrera provided Plaintiff with "Four" (4) pages of his bed movements/assignments and "External Movement(s)" computer printout. Upon Plaintiff receiving these "State Created Documents", it was discovered that Plaintiff had falsily been "Designated" as being on "A SENSITIVE NEEDS YARD" (S.N.Y.) also known as A Protective Custody (P.C.) yard, which houses snitiches and inmates that are victims or constently being victimized, while Plaintiff was incarated/housed within the High Desert State Prison (Herein after HDSP) facility "B" from October 5th, 2004, October 7th, 2004, February 19th, 2005 and November 15th, 2007.

135. Plaintiff "IMMEDIATELY" filed a "STAFF COMPLAINTFOR MISCONDUCT" and/or "CITIZEN COMPLAINT" against California Dept. of Correction and Rehabilitation (CDCR-Sacramento) and Calif. State Prison-Lancaster (CSP-LAC) for their Intentional and Maliciously placing Plaintiffs Life and Safety in "IMMINENT PERIL" and setting Plaintiff up to be viciously assaulted while he slept, which resulted in Plaintiff suffering "LIFE ALTERING BRAIN DAMAGE, PHYSICAL INJURIES, EMOTIONAL AND PSYCHOLOGICAL INJURIES AND DAMAGES" all the while when these named defendants were repeatedly made aware of Plaintiffs and inmate Johnson had not been compatable to cell-up together with each other.

136. This was the result of CSP-LAC Administrators, Warden's , and facility officers and their supervisor's for and/or by placing these falsifide, frabricated, fraudulent documents within Plaintiffs Central Files (C-Files) they each knew to being false records reflecting that Plaintiff is a "Sex Offender" of some sort, and that Plaintiff's been on a "Protective Custody/Sensitive Needs Yard" (P.C./S.N.Y.) back while Plaintiff was incarcerated within the High Desert State Prison on dates of 10/5/2004, (X's 2-dates) 2/19/2005, and 11/15/2007, all of which is a "Blatant Lie" and Plaintiff feels this "Incriminating Frabricated, Falsifide Information has been Intentionally Placed within Plaintiff's C-File(s) Records to "Endanger Plaintiff's Life, Welfare, Safety and Security as an additional Intentional Acts of "Retaliation, Reprisal and Harassment to initiate having Plaintiff Brutally and Savagely Beaten again.

137. CDCR's Administrator's including but not limited to : correctional counselors one and two (CC-I, II) correctional captains, lieutenants , sergeants and other individuals whom have access to Plaintiffs "Electronically Stored Central File Records", whom are the only state correctional officials that have access to these informational system whom can "input" information pertaining to inmates within the cdcr-electronically stored records, kept and maintained by them and Plaintiff "TRUELY BELIEVES" that CSP-LAC correctional officers and supervisors have placed these falsifide, frabricated and fraudulent documents and information within Plaintiffs C-Files for the sole purpose to "Endanger Plaintiffs Life".

138. Plaintiff had sought to have these falsifide, fraudulent documents "Immediately Removed" from his C-File(s) prison records of being a "Sexual Predator", "Sex Offender" and the "Protective Custody (P.C.)

-"Sensitive Needs" yardinformation claimed when Plaintiff was incarcerated within HDSP and requested "Outside Law Enforcement Agency" and "Internal Affairs Investigation", due to Plaintiffs "Unshakeable Beliefs" that it was because of this Information being spreaded to the CSP-LAC's inmate main line general population which contributed to Plaintiff being savagely beaten while he slept to the point of just within inches of his LIFE...

139. Then costody correctional officers and their supervisors along with CSP-LAC's Medical Personnel all so named and identified herein have Intentionally Delayed Plaintiff in receiving Life Saving Medical Treatment and Emergency Triage Treatment First Hand directly at the CSP-LAC Correctional Treatment Center (CTC) and then even Life-Flighted out to Antelope Valley Health Care Hospital, the extended medical problems and damages Plaintiff suffered-just posible would not have been as serious injuried as he was deemed to have been.

140. Instead, Plaintiff was first "Paraded Around" the facility "B-3" housing unit, and then to the facility "B" medical clinic whereas, Plaintiff had to wait "Unconscious and Comatose", while correctional officers (defendants)went off facility to central control to obtain a camera, photographed his numerous, multipal life threating injuries and then had to await for the institutional medical services to summon an ambulance to the facility "B" medical clinic wheras Medical personnel knew they did not have the equipment nor on-hand Knowledgable medical prison staff to treat Plaintiff's life altering medical injuries, then the ambulance that should have already been at the facility "B" medical clinic awaiting Plaintiffs arrival at the facility "B" medical clinic to take Plaintiff stright to the Main Correctional Treatment Center (CTC) Triage Treatment Area (TTA) or

Emergency Room, but upon Plaintiffs arrival at CTC-TTA in a "Comatose State" near Death..."MORE PHOTOGRAPHS HAD ALLEGEDLY TO BE TAKEN".. by the CSP-LAC Investigative Services Unit (I.S.U.) officers.

141. The facility "B" medical clinic nursesor the CTC-TTA licensed vocational nurse (LVN) or registered nurse (RN) had the inclination to fill out their "Mandatory CDCR-7219 Medical Report of Injury or Unusual Occurrence" form, which every prisoner or correctional employee whom sustains any form of injury by either the actual person on the job injuries and/or inmate/prisoner(s)inflicting on another inmate/prisoner(s) or on themself, Which in all cases a CDCR-7219 medical injury MUST BE FILLED OUT. In any case GOD ONLY KNOWS...there was more then enough time to do so, with the Plaintiff's PHOTO-SHOOT of his life threatening injuries, and extensive wait for medical emergency transportation to the outside hospital.

142. For these stated reasons defendant's both named and unnamed correctional officers and licensed medical personnel were Intentionally Deliberately Indifferent to Plaintiffs Emergency Medical Needs, and therefore, are liable to Plaintiff as such for also contributing to Plaintiffs life altering injuries and placing Plaintiff in potential dager.

143. Plaintiff asserts that Defendant "Chander P. Malhotra", Medical Doctor (MD.) whom was at all times mentioned herein, was employed by CDCR and CSP-LAC as their on-site/on-call medical doctor as an "Neurologist", and as such, was medically responsible for Plaintiffs follow-up medical treatments, services, and care which he failed to provide to Plaintiff when said defendant was well aware of Plaintiffs "Traumatic Brain Injury" yet, failed to provide Plaintiff with the most basic and/or minimal amount of medical services, treatments, or care.

144. Instead, defendant "Chander P. Malhotra", Intentionally, Sadistacially and with Malicious state of mind and his personal video's "Tele-Medicine Consultations" at all times "Harassed", and "Threatened" Plaintiff on a repeated basis, accussing Plaintiff's injuries as being "Malingering" and therefore, refused to provide/administer proper "Neurology Care" to Plaintiff for which Plaintiff only seen via Tele-Medicine Conference and "NOT ONCE IN PHYSICAL PERSON", and thereby never personally examined Plaintiff at any time during Plaintiffs incarceration at CSP-LAC or anywhere else.

145. Defendant Chander P. Malhotra only concern was to continuously ask Plaintiff if he was going tosue CDCR and those "defendants" whom placed Plaintiff "Safety and Security" in "Imminent Danger" resulting in the Brain Damages and other "Physical and Emotional Injuries Plaintiff suffered". All said defendants conversations with Plaintiff consisted of "If Plaintiff was going to sue and defendant Dr. Chander P. Malhotra went so far as to state and/or accuse Plaintiff repeatedly of faking and over exaggerating his actual physical injuries, and because this particular defendants conversation were routinely about if Plaintiff was going to seek legal action as a result of what transpired to him "Plaintiff" had become so frustrated and angry by these "Tele-Medicine video Consulatations/Conferences with defendant "Chander P. Malhotra, that Plaintiff no longer wished to see said defendant unless he came in person to treat Plaintiff and because Plaintiff's entire left-side of his body was in constant unbearable, "Excruciating Pains" and "Discomforts", that was so bad, Plaintiff could not sleep and when Plaintiff was able to achieve a few minutes to sometimes a couple of hours Plaintiff would have reoccurring nightmares.

146. Plaintiff also asserts that he had now needed certain Medical Accommo-

dations and appliances (Orthopedic Appliances) for which Plaintiff either previously had possessed, was medically ordered for Plaintiff at CCI-Tehachapi "Outpatient Hospital Unit"(OHU) but upon Plaintiff requesting such accommodations and explaining to the best of his ability the medical necessity which qualify Plaintiff to be provided such medical appliances. Defendant Dr. Chander P. Malhotra, denied Plaintiffs medical request not based on any medical justification but solely to harass Plaintiff as it was evident that Plaintiff possessed a "Legitimate Medical Need(s)" and reason to "Grant" such a valid Medical Request as various other medical doctors (whom names are unknowned to Plaintff at this time) but employed within CSP-LAC had referred Plaintiff to the prisons Mental Health Psychologist. Yet, Plaintiff was not mentally capable to access the significance of the extent of his sustained injuries or what happen to him on that day in July which he was severly beaten, and injuried for the remainder of his natural life.

147. Plaintiff asserts that he had been manipulated and tricked into taking "Psychotropical Medications" which mental health psychiatrist claimed was medication to help Plaintiff sleep as also for Plaintiffs "Excruciating pain and suffering" Yet, the(se) medications prescribed to Plaintiff in which he was decieved/tricked into taking turned out to be a "Psychotropic Medication".

148. Plaintiff asserts that in his efforts to document and attempts to clearly and concisely chronolize these facts as best he could, Plaintiff does/did remember some events and had neatly printed what he could recall. As Plaintiffs memory is good and intacted, but his mind and thought processing is (in Plaintiffs beliefs) like that of someone whom has suffered a "Stroke", and if one could get passed his "Slurred Speech" or one of Plaintiff "Migraine Headach Episodes"...Plaintiff wou-

-ld be easily understood.

149. Plaintiff has some but not all his various medical records that would support and substantiate Plaintiffs claims of sever deliberate indifference to Plaintiffs serious medical needs, treatments services and care rising to the level of the stated Constitutional Violations for the above and "Cruel and Unusual Punishment".

150. Plaintiff asserts that he did the best he could in his circumstances, without trying to aggrivate his situation to exhaust all his administratived remedies that were "Unavailable" to Plaintiff due to the "Screening-out, and Rejecting" of Plaintiffs grievances appeals as so Plaintiff would not and could not accomplish achieving full exhaustion and adjudication of said appeals as so CDCR and CSP-LAC would be able to avoid this Civil Action Law suit for these violations stated herein , which is supported and proven by the CDCR-695's of defendants "D. Cobb", "V. Powers", and "B. Harris", appeals coordinators within the Lancaster State Prison, thereby making what is to have been Plaintiffs "Available Administrative Remedies", "Unavailable", therefore, any form of "Exhaustion as related to the matters setforth herein, should not be required for Plaintiff to Exhaust".

151. THEREFORE, by these numerous United States Constitutional Amendment Rights Violations, as well as The Violations of Plaintiffs Constitutional Rights as setforth in the State of California Constitution, Defendants are Responsible for the Damages and Permanent Injuries Plaintiff has suffered and thereby, are amongst other things "Liable to Plaintiff" for the "Monetary Damages and Compensatory Relief" so stated within Plaintiffs "Prayer for Relief" that Plaintiff seeks.

152. Defendants On-Going denial(s) of "Adequate Medical Care and Treatment for Plaintiffs "Serious Medical Needs", and for the "Intentional and Delib-

erate Refusal to Investigate Plaintiffs Health Care Issues that Include, But not limited to: Destruction of Medical Records, The Failure to Ensure the Availability of Medical Records at all appointments [i,e. MRI's and X-Ray Films, etc, etc.], The refusal to fully carry out the Medically Ordered Recommendations of Treating Specialty Physician(s), Disbelieving and/or Ignoring the Medical Health Care Complaints made by Plaintiff and the refusing to adequately treat Plaintiffs "Extreme Intractable Pains".

153. As a result of Plaintiffs protest described herein above, Plaintiff was continuously "Berated", "Threatened" and "Verbally Abused" by CSP-LAC prison correctional staff listed as defendants herein, it is plainly obvious that Plaintiff was Clearly "Tormented" by correctional staff, officers, and medical personnel.

154. Subsequently, Plaintiffs continuously pleaded for Medical Attention and strenuously objected to the "Extreme and Out rageous Unnecessary Pain and Suffering" he was being "Maliciously" subjected to. But, Defendants Corrections, by and through its Agents and Medical Personnel aforesaid Outright Ignored Plaintiffs **Pleas**, Denied Plaintiff Medical Care and threatened Plaintiff with further "Adversed Actions". The Inhuman and Degrading Treatment of which Plaintiff has endure amounts to "Torture", and is evidence of Deliberate Indifference to Plaintiffs Serious Medical Needs.

155. Defendants named herein by and through its agents, Medical Personnel were continuouysly biligerent towards Plaintiff by Interrogating Plaintiff about his medical condition(s) and Maliciously and Intentionally Confiscating Plaintiffs Approved Prescribed Medical Appliances and Outright Interferrence with Plaintiffs efforts to seek and obtaine adequate Medical Care and Treatment for these very same Medical Issues

of which Plaintiff has been complaining about, this also is evident of "Deliberate Indifference" to Plaintiffs Serious Medical Needs.

156. Plaintiff is Partically Disabled and confined to using a wheelchair for ambulations due to the "Myriad of Medical Symptoms" that affect Plaintiffs entire body and head. Defendant Dr. Chander P. Malhotra, whom it is alleged was acting in the course and scope of agency for CDCR, Conspired with CSP-LAC prison officials and staff engaging in attempting to "Cover-Up" Plaintiffs Serious Bodily Injuries", by Falsifying Medical Records and/or Reports, and down playing the seriousness of Plaintiffs Medical Condition, and Deny/Depriving Plaintiff of Adequate Medical Treatments, Services and Care.

157. It should be also noted that Plaintiff continues to expernce Pains that is alot of times beyond the limits of Plaintiffs ability to endure. Plaintiff Pleaded and begged for adequate Medical Care for his Serious Medical Needs but all his efforts were futile. Plaintiff was informed by Defendant Dr. Chander P. Malhotra, about seeing another different "Neurosurgeon" since it was a Neurosurgeon for whom was treating Plaintiffs Traumatic Brain Injury, but Plaintiff was continuously told that there was no other Neurosurgeon under contract for CSP-LAC.

158. Moreover, prison after prison, and year after year Plaintiff's continuous efforts to seek and obtain Adequate Medical Treatments, Services and Care have been "Systematically Thwarted and/or Denied". But if and when Plaintiff is lucky to obtain a medical appointment for his medical conditions, these intentional delays by correctional staff's and medical personnel in and for CDCR "Outrageous Conduct" directed towards Plaintiff is also in direct violation of "inter alia" Plaintiffs State Law Right to "Immediate and Adequate Medical Treatment Un-

der California Government Code Section 845.6; and California Penal Code Sections 147 and 673 which imposes a "Mandatory Duty Upon CDCR To Treat Plaintiff "Fairly" and "Humanely" and Protect Plaintiffs Physical and Mental Wellbeing".

159. It is well established that Physicians and Court(s) have found that many inmates have been "Irreparably Harmed" while under the Custody, Care, and Control of CDCR from "Grossly Deficient Medical Care Rendered to them". Plaintiff is one of such inmates/prisoners. And in totality of these stated facts herein, it is clear that Plaintiff is in dire need of Immediate Medical Treatment. What is equally clear is that these named defendants could not provide Plaintiff with the necessary medical treatments, services and care required for Plaintiffs Medical Condition(s).

160. Plaintiff has attempted at every stage to obtain the "Adequate Medical Trteatment(s) he requires by and through CDCR's authorized agents and medical personnel have done nothing except to interfer and deny/deprive Plaintiff adequate medical care or intentional delays of providing such Medical Treatments, Services, and/or Care. Evidently, Plaintiff has shown overwhelming Direct and Circumstantial evidence herein this Civil Rights Complaint to support each of his claims.

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES:

161. Plaintiff asserts that he attempted on nu7merous occassions to fully Exhaust his Available Remedies, but each time his efforts were "CHILLED" by Lancaster State Prison's appeals coordinators defendants "B. Harris","D. Cobb" and "V. Powers", whom upon Plaintiff submitting/filing greivance appeals log numbers: LAC-B-13-04107, and LAC-B-13-03570

had either "Rejected" and/or "Cancelled" Plaintiffs grievance appeals all the while knowing that Plaintiff suffered from the results of his "Traumatic Brain Injury" and needed assistance in articulating his Issues contained within these appeals but, also knowing that if they prvided Plaintiff any type of assistance and he did file a Federal Civil Actions against his co-workers and other CDCR and CSP-LAC custody and medical personnel, then they in essence would be assisting Plaintiff with placing nails on their own coffen to "Seal Their Faith".

162. Plaintiff asserts that California Administrative Codes and Regulations (CCR) Title 15. Section(s) §3000.5.(f) pertaining to the "Timely Filing of CDCR-602 administrative inmate/parolee grievance appeals clearly makes "Exceptions" for such Prisoner like Plaintiff and this situation. (CCR) Title 15. §3000.5.(f) states:

> "The time limits specified in these regulations, do not creat a right to have the specified action taken within the time limits".
> The time limits are directory, and the failure to meet them does not preclude taking the specified action beyond the time limits.

Also: Title 15. §3084.9(1)(A), (2)(B) states:

> When circumstances are such that the regular appeal time limits would subject the inmate to substantial risk of personal injury or cause irreparable harm the appeals shall be processed as an "Emergency" appeal.
> Emergency Circumstances include, but are not limited to:
> (A) Threat of death or injury due to enemies or "PLACEMENT CONCERNS"
> (B) Serious and Imminent threat to health and Safety.
> (2) An Emergency appeal shall be submitted directly to Appeals Coordinator and shall include a clear description of the circumstances warranting emergency processing.

163. Plaintiff asserts that all his attempts at obtaining full exhaustion of his submitted and filed 602 grievance appeals were continuously thwarted by the Lancaster State Prisons Appeals Coordinators so named as defendants herein this Civil Right Violation Action, and these named appe-

als coordinators could and should have accepted the appeal(s) and processed them pursuant to (CCR) Title 15. §3084.6(4) yet, said defendants instead repeatedly rejected and cancelled Plaintiffs appeal grievances, which clearly mets the criteria setforth within the California Administrative Codes and Regulations.

164. This reviewing/screening Court is allowed to excuse the exhaustion requirements if Plaintiff was intentionalkly obstructed and/or hindered from fullfilling the exhaustion requirements and Plaintiffs efforts to do so was "CHILLED" and his brain injuries was never taken into consideration. Plaintiff seeks this court to review these circumstances for which Plaintiffs has documentary evidence of such hinderences and can provide evidence of this fact if this court so requires prior to any orders being issued in this matter but after the screening process.

165. This Court should deem any and all grievances appeals that had been submitted and filed by Plaintiff to been fully exhausted, or at least provide Plaintiff upon reviewing this Civil Rights Violations Action to setforth any pleadings as related to Plaintiff being prohibited to achieve exhaustion, and provide to this Honorable Reviewing Court his Evidence showing that defendants knowing that Plaintiff had these grounds for this Civil Lawsuit did all within their power of authority to asure that Plaintiff would not be able to fullfill the state mandated exhaustion requirements. Plaintiffs Physical and mental condition should also be considered under these extraordinary circumstances which prohibited Plaintiff from understanding the Federal Courts Process, as other individuals whom claimed to been assisting Plaintiff in his efforts to achieve Judicial Review of these matters so stated herein had ulterior motives and this also was not evident to Plaintiff as Plaintiff is unfamilar with the Law let alone Civil Rights Laws.

166. Plaintiff Request that this reviewing Court during its screening process of this action please direct its attention to what Plaintiff has stated about his Traumatic Brain Injury suffered as the direct result of the vicious and brutal beating of Plaintiff on July 12th, 2013. In so doing Plaintiff request that this court make a special finding in accordance to case laws: Bills v. Clark, 628 F.3d.1092 (9th Cir.2010). also see Ford v. Gonzazles, 683 F.3d.1230, 1237 (9th Cir.2012) Plaintiff is filing this Civil Action with the assistance of Prisoner Mr. Edward Thomas, #P-64423, due to what is stated above and Plaintiffs Medical Condition and request this reviewing court take this into consideration as well.

## VI. CAUSES OF ACTIONS:

167. FIRST CAUSE OF ACTIONS: INTENTIONAL ASSAULT ON PLAINTIFF AND CRUEL AND UNUSUAL PUNISHMENT; VIOLATIONS OF STATE AND FEDERAL LAWS:

Plaintiff incorporates by reference Paragraphs #1 through #166 as has been fully setforth herein.

168. Defendants so named herein Violated Plaintiffs Constitutional Amendment Rights under California State Law and the "Eighth Amendment"(8th) to the United States Constitution, and caused Plaintiff Significant Physical Injuries, Intense Intractable Physical Pain and Suffering and "Emotional and Psychological (Extreme)Distress. Therefore, Plaintiff has been Damaged in the amount of "Seven Hundred and Fifty Thousand "American" Dollars" ($750,000) As just compensation, according to proof.

169. Title 42 of the United States Code, Section 1983, provides for a Civil Action for Damages against any "Individual or Entity" acting under

Color of Official State Law and Authority, when that Entity Deprives any Citizen of any Rights Guarantee under the United States Constitution.

170. The United States Constitution Guarantees that All Citizens Shall Not Be Subjected to "Cruel and Unusual Punishment. In acting as described herin above, Defendants so named acting in the capacities as state entity's/agents acted Despicably, Knowingly, Willfully, and Maliciously, and/or with Reckless or Callous Disregards for Plaintiffs State and Federal Rights Protected under these amendments so listed herein.

171. SECOND CAUSE OF ACTION:

VIOLATION OF FIRST AMENDMENT RIGHT TO FREEDOM OF SPEECH AND RIGHTS TO SEEK JUDICIAL REDRESS OF GRIEVANCES

172. Plaintiff incorporates by reference Paragraphs #1 through #166 as has been fully setforth herein.

172. Defendants (Correctional Agents/officers so named) Retailated/Retaliation including the removal of Plaintiff from the General Prison Population-Main Line upon Plaintiff being released from the CCI-Tehachapi outpatient housing unit (OHU) and placed within the Lancaster State Prisons (CSP-LAC) Disciplinary Administrative Segregation Housing Unit on August 16th, 2013, after Plaintiff was the "Victim" of the vicious and brutal assault upon his physical person resulting in Brain Damages and other Physical and Emotional Injuries, and Plaintiff had his Real, Personal, Legal, Medical, and Miscellaneous property basically stolen from him/his celoled that had been pad-lock by Investigative Services Unit (I.S.U.) as a crime scene, then upon the pad lock being removed the named defendants collected Plaintiffs Property from out of the cell and did "GOD know's what" with Plaintiffs property. Upon Plaintiff Filing his administrative appeal grievances on these matters to inclu-

de Plaintiffs Medical Appeals as well, Defendants Threatened Plaintiff for filing said grievances as they related to these matters, and said defendants continuously Rejected, Cancelled, and Denied Plaintiff his rights to obtain full administrative exhaustions of his issues thereby , "CHILLED" Plaintiff efforts to adjudicate his administrative remedi es, and the denial of the most basic Medical Care for Plaintiffs Serious Medical Needs which amounts to "Deliberate Indifference to Plaintiffs Serious Medical Needs", which is a Violation of Plaintiffs Rights to Free Speech and to seek redress of grievance, within the First Amendment (1st) to the United States Constitution.

173. THIRD CAUSE OF ACTION:

VIOLATION OF EIGHT (8th) AMENDMENT: DELIBERATE INDIFFERENCE TO PLAINTIFFS SERIOUS MEDICAL NEEDS.

174. Plaintiff incorporates by reference Paragraphs #1 through #166 as has been fully setforth herein.

175. Defendants Correctional Medical Personnel so named within this action had/has a duty to provide Plaintiff adequate Medical Treatment(s), Service(s), and Care for Plaintiffs Serious Medical Needs, including but not limited t othe following: "REPEATED" Medical Orders and Recommendation(s) of Plaintiffs Treating Medical Specialist [i,e. Neurologist] Treatments for Plaintiffs Serious Medical Brain Injuries, and numerous other documented Medical Injuries that Plaintiff had suffered as a result of the vicious and brutal July 12th, 2013 BEATING as so described herein.

176. Defendants Breached that duty by failing to provide the most basic of adequate medical treatment(s), services, and care. This Breach caused and contributed to Plaintiffs Extreme Emotional and Psychological Distress and Intense Intractable Physical Pains and Suffering, and as a

result diminish Plaintiff use of certain bodily/physical functions, suffering slight "Vertigo", and "Equilibrium" episodes, Memory loss or Difficulty Recalling/Recollecting certain Events, Paranoia, and Numerous other damages as so stated herein for the remainder of Plaintiffs Natural Life.

177. Therefore, Plaintiff has been Damaged in the amount according to proof Defendants conduct constitutes Deliberate Indifference to Plaintiffs Serious Medical Needs.

178. Title 42 of the United States Code, Section 1983, provides for a Civil Action for Damages against any Individual or Entity, Acting Under Color of Official State Authority, when that Entity Deprives any Citizen of any Rights Guaranteed under the United States Constitution.

179. The United States Constitutionj Guarantees that all Citizens SHALL NOT BE SUBJECTED TO "CRUEL AND UNUSUAL PUNISHMENT".

180. In acting as described herein above, defendants agents acted Despicably, Knowingly, Willfully and Maliciously, and/or with Reckless or Callous Disregards to Plaintiffs Protected Rights, Safety, Security, Welfare, and Wellbeing as so stated herein.

181. FOURTH CAUSE OF ACTION:

CONSPIRACY: VIOLATION OF STATE AND FEDERAL LAW(S)

182. Plaintiff incorporates by reference Paragraphs #1 through #166 as has been fully setforth herein.

183. Defendants as identified herein (Correctional Officers, Medical Personnel, and Appeals Coordinator(s)) Violated Plaintiffs State and Federal Rights when they each Conspired to Retaliate and Utilized Reprisal and Intentionally Harassed, and Threatened Plaintiff to the point that Plaintiff was in Immediate Peril and in Fear for his Safety and Security, for Exercising his Constitutionally Protected Rights to Free Spe-

ech, and Rights to seek Redress of Grievance(s) and ssaid defendants collaborated collectively and Conspiring to engage in their "Code of Silence" and actively Cover-Up the(se) events which took place which lead up to PLaintiff being Victimized on July 12th, 2013, as so described herein.

184. The Conspiracy against Plaintiff caused Plaintiff "Extreme Emotional and Psychological Distress, and Intense Intractable Physical Pain(s) and Suffering. Therefore Plaintiff has been Damaged/Injuried in an Amount as requested under Prayer for Relief and According to Proof.

185. Title 42 of the United States Code, Section §1983, Provides for a Civil Action for Damages against any Individual or Entity, Acting under Color of Official State Authority, when that Entity Deprives Any Citizen of any Right(s) Guaranteed under the United States Constitution.

186. In acting as described herein above, Knowingly, Wilfully, and Maliciously, or with Reckless or Callous Disregard for Plaintiffs State and Federal Rights.

187.

## FIFTH CAUSE OF ACTION:

## VIOLATION OF CALIFORNIA GOVERNMENT CODE SECTION 845.6: STATE LAW

188. Plaintiff incorporates by reference Paragraph #1 through #166 as has been fully setforth herein.

189. Plaintiffs Medical Condition, as described herein, Constitutes a "Serious Medical Need in that Failure to Adequately Treat Plaintiffs Condition(s) has resulted in further significant injuries, and the ongoing Failure to treat Plaintiffs Medical Condition(s) has/is likely to causemore Serious Injuries to Plaintiffs Physical Person.

190. Defendants (Medical Personell and Dr, Chander P. Malhotra) has/had a "Duty" to provide Immediate and Adequate Medical Treatments, Services

and Care for Plaintiffs Serious Medical Needs, Including but not limited to: Following the Repeated Medical Orders and Recommendations of the treating Medical Specialist [i,e. Neurosurgeons, etc, etc.] Treatment for Plaintiffs Untreated Serious Brain Injury suffered when Plaintiff was brutally beaten while he slept, and correctional officers disregards to Plaintiff Serious Medical Condition when they Draged Plaintiff by his arm when he was Bleeding from his Face, and Ear, was in a Comatose State UNRESPONSIVE, and posed no threat yet, was forced into handcuffs and then needed medical treatment was substantially Delayed. All of which has been described herein.

191. Defendants Breached that duty by Failing to Provide Immediate and Adequate Medical Care and Treatment(s). This Breach caused Plaintiff Extreme Emotional and Psychological Distress and Intense Intractable Physical Pain and Suffering, and resulted in Plaintiff suffering numerous other medical and emotional ailments for the Rest of Plaintiffs Natural Life. Therefore, Plaintiff has been Damaged in the amount requested under his Prayer for Relief incorporaterd herein According to Proof.

192. Defendants as so named herein Violated Plaintiffs State Law Right to Immediate and Adequate Medical Treatments, Services and Care Under California State Government Code Section §845.6. they Knew and Continue to have reason to know that Plaintiff requires said Immediate Care and Treatment.

193. Title 42 of the United States Code, Section §1983, provides for a Civil Action for Damages against Any Individual or Entity, acting under Color of Official State Authority, when that Entity Deprives Any Citizen of Any Rights Guaranteed under The United States Constitution.

194. In acting as described herein above, Defendants acted Despicably, Knowingly, Wilfully and Maliciously and/or with Reckless or Callous Disr-

egard for Plaintiffs State Law Constitutional Rights and in doing so are liable to Plaintiff for the requested Damages and other Compensatory Monetary Damages listed under Plaintiffs Prayer for Relief submitted herein.

195. SIXTH CAUSE OF ACTION:

FOURTEENTH AMENDMENT: FAILURE AND/OR REFUSAL TO FOLLOW STATE AND FEDERAL LAW(S): "DUE PROCESS".

196. Plaintiff incorporates by reference Paragraphs #1 through #166 as has been fully setforth herein.

197. Each of the named Defendants (To Include all John/Jane does 1-thru-10) Failure and/or Refusal to follow State and Federal Law(s) Constituted Arbitrary and Oppressive Action(s) against Plaintiff under the Fourteenth Amendment to the United States Constitution, Including the Laws as follows:

(a) STATE LAWS:

(i) Section §3000.5.(c), §3004(a), §3291(a), §3391 of the California Code of Regulations Title 15. Administrative Regulations;

(ii) Section §147 and §673 of the California Penal Code;

(iii) Article I. Sections §§2, 3, and 7 to the California Constitution;

(b) FEDERAL:

(i) First (1st), Sixth (6th), Eighth (8th) and Fourteenth (14th) Amendments to the United States Constitution.

198. SEVENTH CAUSE OF ACTION:

INTENTIONAL INFLICTION OF SEVER EMOTIONAL AND PSYCHOLOGICAL DISTRESS

199. Plaintiff incorporates by Reference Paragraphs #1 through #166 as has been fully setforth herein.

200. Defendants Intentionally Infliction of Sever Emotional and Psychological Distress upon Plaintiff by Mistreating Plaintiff in the manner described herein.

201. In acting as described herein above, Defendants acted Despicably, Knowly, Wilfully, and Maliciously and/or Reckless or Callous Disregards for Plaintiffs Rights a setforth herein.

20[illegible]. The Plaintiff has no Plain, Adequate or Complete Remedy(ies) at Law to Redress the Wrongs Described Herein. Plaintiff has been and WILL CONTINUE TO BE IRREPARABLY INJURIED AND HARMED BY THE CONDUCT OF THESE DEFENANTS, THEIR AGENTS AND/OR INDIVIDUALS ACTING ON BEHALF OF SAID DEFENDANTS, AND/OR IN ACTIVE CONCERT WITH THE ABOVE ENTITIES AND THE CONDUCT AND BEHAVIOR DESCRIBED HEREIN BY SAID DEFENDANTS UNLESS THIS COURT "GRANTS" THE DECLARATORY AND INJUNCTIVE RELIEF FOR WHICH PLAINTIFF SEEKS.

203. "P R A Y E R F O R R E L I E F"

WHEREFORE, Plaintiff Respectfully Request and Prays that this Honorable Reviewing Court Entering Judgement and Granting to Plaintiff the following Relief:

204. A Declaration that the Acts and Omission(s) described Herein Violates Plaintiffs Rights Under the Constitution(s) and Laws of the United States and the State of California;

205. A Preliminary and Permanent Injunction Ordering Defendants and/or Agents acting in concert with and/or behalf of the(se) named defendants to cease and disist their ongoing Retaliation and Reprisal against Plaintiffand the Intentional Interference with Plaintiffs Efforts to Access basic, Adequate Medical Treatments, Services, and Care for Plaintiffs Serious Medical Needs. (ii) Order Defendants and/or Agents acting in concert with and/or on behalf of the(se) named defendants to Provide Plaintiff with IMMEDIATE AND ADEQUATE MEDICAL TREATMENTS, SERVICES, AND CARE FOR PLAINTIFFS SERIOUS MEDICAL NEEDS [i,e. Brain Injuries,

and to be seen by a licensed specialist "Neurologist, Psychologist, etc, etc.] Diagnostic Testing, Accommodations for Medications and Impairments, and Treatments to include Necessary Muscle Relaxants and Pain Medications or Appropriate Dosages thereof According to Proof;

206. Monetary Compensation in the amount of "One-Hundred and Fifty Thousand American Dollars" ($150,000.00) as just and adequate Compensation Damages as a Direct Result of said Defendants "Intentional and Malicious Negligence" acts and/or actions and Damages imposed upon Plaintiff by these said defendants;

207. Actual Compensatory Damages in the total sum amount of "Seven-Hundred and Fifty Thousand American Dollars"($750,000.00) Jointly against each Defendant and Severally to this Action;

208. Punitive Damages Rewards: in the Total Amount Sum of "One-Hundred and Fifty Thousand American Dollars" ($150,000.000) against each Defendant Jointly and Severally to this Action;

209. Actual Pain and Suffering: in the Monetary Amount of "Two-Hundred and Fifty Thousand American Dollars" ($250,000.00) Collectively and Jointly against each named defendants and Severally for said infliction upon Plaintiff;

210. A Jury Trial on All Issues Triable by a Jury;

211. Plaintiffs Cost and Filing Fees as related to this Civil Action Law suit, and/or any Appeals that may need to be filed in this matter;

212. For Reasonable Attorney Fees Pursuant to 42 USC §1988;

213. Any Additional Relief this Court Deems Just, Proper and Equitable.

//

Dated:September 14th, 2018

Respectfully Submitted: Jermaine Bailey

//

//

Mr. Tremaine Bailey, #T-76513
Salinas Valley State Prison
P.O. Box 1050/31625 Hwy. #101
Soledad, Calif. 93960-1050
(For Plaintiff in Properia Persona)

# AFFIDAVIT

STATE OF CALIFORNIA

COUNTY OF Monterey } SS.

I, Edward Thomas, #P-64423,

Being First Duly Sworn, deposes and says:

#1. I am not a party to this Civil RIghts Violation Action;

#2. That On or About August 1st, 2018, I met the Plaintiff Mr. Tremaine Bailey, #T-76513, within the Salinas Valley State Prison, Facility C-1, and upon our meeting I'd informed Prisoner Bailey (Plaintiff) that I was a Jailhouse Litigator, to which Inmate Bailey Asked if I could Possible assist him with the filing of a 42 U.S.C. §1983, for which he has been "Diligently" seeking someone to help him file his law suit against State Correctional Officers at the Lancaster State Prison;

#3. Upon my reading the previous documents that had been filed on Priosner Bailey's behalf, I'd notice the discrepencies this Review District Court had priorly dismissed Prisoner Baily's Claims upon;

#4. I, Edward Thomas, #P-64423, Incarcerated within the Salinas Valley State Prison, have provided Prisoner Bailey with my facilitation of what he could articulate to me of the events given rise to this Civil Action Lawsuit under 42 U.S.C. §1983, and have drafted this complaint on behalf of Prisoner Bailey, whom (In My Observation and Opinion) suffers from his Traumatic Brain Injury (Damage(s)) and from what I could decpher from his limited recollection of passed events that are documented within this Civil Action Law Suit, put together the best I could gather as to what transpired with and to Prisoner Bailey within thi0s civil action;

#5. Prisoner Bailey (Plaintiff) suffers from said Brain Injury Trauma, that makes if almost Impossible to have been able to put his limited thoughts to paper and articulate his Rights in which have been violated by both Custody Correctional Peace Officers, Licensed Medical Personnel, and Appeals Coordinators whom CHILLED Plaintiff's many efforts to file a grievance appeal and achieve exhaustion of any and all Unavailable administrative remedies;

#6. That if called to testify on behalf of Prisoner Bailey, and the events that have transpired with him at the hands of salinas Valley State Prison Custody Correctional Officers, and the Retaliatory, Harassment Reprisals I've personally witnessed, I wil not hesitate to testify on his behalf;

#7. I am the Individual that has assisted Prisoner Bailey (Plaintiff) with this lawsuit, and the filing thereof, to which Prisoner Bailey (In my Opinion) will be in need of appointed Legal Assistance to assist him with any further legal preparations within this matter for which he has filed with this Legal action "Three" (3) Motions For Appointments of Counsel, as I am Unsure how much longer I will be able to assist Prisoner Bailey in these proceedings.

I, Edward Thomas, #P-64423, Swear under Penalty of Perjury under the Laws of the State of California, that the forgoing is True And Correct, Excuted this 14th day of September, 2018.

Mr. Edward Thomas #P-64423 [signature]

Mr. Edward Thomas, #P-64423
Salinas Valley State Prison

COPY

I'm writing this on behalf of the plaintiff Tremaine Bailey CDC# T76513, To help bring the truth to the best of my ability. I, Terrance Harris #V34849 was an inmate at CSP-LAC during the time of the incident involving Bailey and Johnson. I was housed in B3-234. I know that the administration at CSP-LAC was made aware of the fact that Dominic Johnson AK5828 has severe mental issues making it impossible to live with. On two occasions prior to his attack on Bailey, he had arguements and fights with both of his cellmates, and many near-incidents with others on the excersize yard. Certain inmates attempted to get Johnson single cell status to ~~be~~ avoid any problems, to no avail. prior to said incident Johnson refused to allow Bailey into that cell, but both were forced into ~~the~~ living together. All warnings and facts were totally ignored by staff.

Now that ~~the~~ Bailey and I are at another institution it is obvious to me that Bailey has suffered both physical and mental damage. I decided to sit down and try to help him research and document this for the court. Mr. Bailey's memory is good, but his mental and physical injuries are blatant. I have sance learned that Johnson is housed on an E.O.P yard because of his severe mental issues.

I declare under penalty of perjury that these are facts as I know them.

Terrance Harris CDC #V34849

[signature]

# PROOF OF SERVICE BY MAIL

## BY PERSON IN STATE CUSTODY

(Fed. R. Civ. P. 5; 28 U.S.C. § 1746)

I, TREMAINE BAILEY, # T-76513, declare:

I am 18 years of age and a party to this action. I am a resident of SALINAS VALLEY STATE PRISON Prison,

In the county of Monterey,

State of California. My Prison address is: P.O. Box 1050 / 31625 Hwy., #101, Soledad, Calif. 93960-1050,

On Sept. 14th, 2018,
(Date)

I served the attached: #1. "First Amended Complaint" Pursuant to 42 USC § 1983, #2. Motion for Appoint of Counsel for Federal Civil Proceeding(s) and attached Supplemental Motion in Support Thereof, #3. Civil Cover Sheet, # . Motion/Application to Proceed in Forma Properis.
(DESCRIBE DOCUMENT)

On the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope, with postage thereon fully paid, in the United States Mail in a deposit box so provided at the above-named correctional institution in which I am presently confined. The envelope was addressed as follows:

1. United States District Court
   Central District of California
   Western Division
   312 N. Spring Street., #G-8
   Los Angeles, California. 90012-4793

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on Sept. 14th, 2018
(DATE)

Tremaine Bailey
(DECLARANT'S SIGNATURE)
(for Plaintiff in Properia Persona)

MR. Edward Thomas #P64423
Salinas Valley State Prison
P.O. Box 1050/31625 HWY #101
Soledad, Calif. 93960-1050

CW

OCT - 5 2018

CENTRAL

UNITED STATES POSTAL SERVICE
USPS TRACKING #
9114 9014 9845 0761 1499 71

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION
312 N. Spring Street, Rm # G-8
Los Angeles, Calif. 90012-4793
(Plaintiff's Return Copy)
filed
#2 of 2

Confidential
Legal Mail

c/o [illegible]

9-27-2018

Confidential
Legal Mail